# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3584

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Demon Echols, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  May 14, 2003

Filed:  October 14, 2003

_____

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and SMITH CAMP,* District Judge.

_____

LOKEN, Chief Judge.

After a jury convicted De'mon Echols of federal robbery and firearms offenses, the district court[1] sentenced him to 346 months in prison. Echols appeals, arguing the district court abused its discretion and violated his rights under the Confrontation

_____

*The HONORABLE LAURIE SMITH CAMP, United States District Judge for the District of Nebraska, sitting by designation.

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

Clause of the Sixth Amendment when it denied his request to cross-examine the crime victim on his illegal alien status. We affirm.

Dixie Dixon and Echols kidnaped Miguel Cigarrero on July 14, 2001. Echols held a gun in the back seat of Cigarrero's car as Dixon drove the trio to automated teller machines in south Minneapolis, trying unsuccessfully to withdraw money from Cigarrero's bank account. Echols threatened to kill Cigarrero if he tried to escape. Dixon then drove to Cigarrero's apartment, leaving Echols in the car with Cigarrero while Dixon entered the building. Cigarrero alerted a passing patrol car and escaped. The police captured Echols and Dixon, and Cigarrero identified them at the scene. The jury convicted Echols of carjacking, being a felon in possession of a firearm and ammunition, and carrying a firearm in relation to a crime of violence. See 18 U.S.C. §§ 2119, 922(g), 924(c)(1)(A) and (e).

Before the start of trial, the government asked whether the district court would admit evidence of Cigarrero's status as an illegal alien, because that might affect voir dire of the prospective jurors. Defense counsel Johnson stated, "I guess I would object to not being able to go into his illegal status." The court responded:

> THE COURT: I'm going to reserve any ruling on the relevance of the citizenship status of the victim until I hear a little bit more about what this case is and how the victim's credibility is assailed during the cross-examination, if at all. It strikes me that it's a better subject for a curative jury instruction at the conclusion of the case . . . rather than inquiring about it on voir dire. So I will leave the issue alone. I would ask, Mr. Johnson, that prior to seeking to elicit such testimony from the victim, that you approach the bench and I will give you a green or red light prior to you having that matter come out.
>
> MR. JOHNSON: That's fine, your Honor.

After selection of the jury but before the government presented its case-in-chief, counsel and the district court returned to this issue:

> MR. JOHNSON: With regard to the immigration status . . . . I would simply take the position that if the victim is going to testify, everything and anything about him on cross-examination I should be able to ask.
>
> I'm basing this [on], I've received reports [that] Mr. Dixon has indicated that he and the victim, Mr. Cigarrero, knew each other, and they put together a little scheme to try to get money out of his wife. . . .
>
> THE COURT: I'm going to have to see how that develops. . . . If it's just a fact that . . . he's not a legal alien . . . . and that's a mere coincidence . . . I don't think it has any probative value. I think its prejudicial value exceeds it.
>
> On the other hand, if there is some reason to believe this victim was selected perhaps because he wouldn't likely go to the police because he is illegal or some factual background that makes it more relevant, I will keep an open mind as to the relevance reemerging.
>
> But . . . with the limited submissions I've had so far . . . there isn't any basis to believe that the immigration status of the victim had anything whatsoever to do with . . . who was selected and it was a random victim, [so] I will remain with the ruling that you are required to approach the bench prior to eliciting any testimony about immigration status.
>
> MR. JOHNSON: That's fine.

Neither party raised the issue of illegal alien status during Cigarrero's lengthy testimony as the government's principal trial witness.

On appeal, Echols argues that the district court abused its discretion by precluding him from cross-examining Cigarrero about his illegal alien status. This

fact was relevant to credibility, Echols argues, as "the threat of deportation would act as a powerful incentive for Cigarrero to please the police officers."

We conclude that Echols did not preserve this issue for appeal for three distinct reasons. First, after receiving an unfavorable ruling prior to trial, Echols did not raise the issue during trial. "Even if an issue is raised pre-trial . . . an attorney must make an offer of proof during the trial in order to preserve the issue for appeal." United States v. Kirkie, 261 F.3d 761, 767 (8th Cir. 2001).

Second, the district court's pretrial ruling was tentative, and the court expressly invited Echols to raise the issue during trial, when its relevance could be weighed more accurately against the risk of unfair prejudice. Because the district court explicitly reserved its final ruling, Echols "cannot argue that an objection at trial would have been futile." United States v. Mihm, 13 F.3d 1200, 1204 n.3 (8th Cir. 1994). Thus, his failure to seek a final ruling at trial waived the issue.

Third, Echols did not present to the district court the relevance argument he makes on appeal. Prior to trial, defense counsel alluded to a possible scheme between Dixon and Cigarrero that had no apparent relationship to the latter's immigration status and broadly asserted that he should be allowed to cross-examine about "everything and anything." The alien status question was not revisited at trial. Although the Sixth Amendment's Confrontation Clause guarantees a defendant the right to cross-examine adverse witnesses, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . prejudice." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see FED. R. EVID. 403 (a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice"). Here, the district court expressed concern about possible prejudice and invited Echols to explain the relevance of Cigarrero's alien status. Echols did not do so. He first presented his motive-to-cooperate and credibility arguments in a post-trial motion for

new trial. We cannot conclude that the trial court abused its discretion by excluding potentially prejudicial evidence when the proponent failed to show its relevance. See Kirkie, 261 F.3d at 767.

The judgment of the district court is affirmed.

_____