# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2948

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Anthony Joseph Tenerelli, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 16, 2010
Filed:  August 2, 2010

_____

Before RILEY, Chief Judge, CLEVENGER[1] and COLLOTON, Circuit Judges.

_____


CLEVENGER, Circuit Judge.

Anthony Tenerelli appeals from his convictions of conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; aiding and abetting possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and felon in possession of a firearm in violation of 18 U.S.C. §§ 2,

_____

[1] The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Court of Appeals for the Federal Circuit, sitting by designation.

922(g), and 924(e)(1). Mr. Tenerelli primarily argues that the district court[2] erred in refusing to suppress videotapes seized during a search of his residence and by allowing testimony regarding statements and actions attributed to a confidential reliable informant ("CRI").

I

On August 16, 2006, Deputy Doug Wood, a narcotics investigator with the Ramsey County Sheriff's Department, used a CRI to arrange a methamphetamine purchase from Mr. Tenerelli. Deputy Wood observed the CRI dial Mr. Tenerelli's phone number and listened to the CRI's request to purchase methamphetamine, but could not hear the other side of the conversation. After the phone call concluded, Deputy Wood drove the CRI to a local home improvement store, searched the CRI for contraband and money, gave the CRI money to use for the methamphetamine purchase, and dropped the CRI off in front of the store. Meanwhile, officers stationed at Mr. Tenerelli's residence observed him get into his car and drive to the same store. The officers saw Mr. Tenerelli enter the store with the CRI and observed them exiting together approximately five to six minutes later. The officers had no visual or audio surveillance of Mr. Tenerelli and the CRI while they were in the store. The CRI returned to Deputy Wood's unmarked car with one-quarter ounce of methamphetamine.

Based in part on this controlled buy, Deputy Wood sought a search warrant for Mr. Tenerelli's residence. The warrant was issued and authorized, inter alia, the seizure of "photographs" and "papers, invoices, billings, charge plates, letters or other things which would indicate the owner/renter/occupant of the premise[s]." On the morning of August 24, 2006, Deputy Wood executed the warrant along with a SWAT team and other Ramsey County officers. Mr. Tenerelli was found in the living room of the residence at the time of the search. In close proximity to Mr. Tenerelli, the

---

[2] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

officers seized a loaded 9mm firearm and methamphetamine. The officers also seized 9mm ammunition, cocaine, cash, drug notes, a digital scale, drug paraphernalia, a cell phone, a cable bill addressed to Mr. Tenerelli at the residence, and videotapes that depicted Mr. Tenerelli in possession of a gun and drugs. The officers suspected Mr. Tenerelli also used a room at his parents' house for drug sales and conducted a second search, under the authority of another issued warrant, at Mr. Tenerelli's parents' home. The evidence seized from Mr. Tenerelli's parents' home included a box that contained drugs, Mr. Tenerelli's driver's license, and 9mm caliber ammunition that fit the firearm seized at Mr. Tenerelli's residence.

Mr. Tenerelli was arrested and indicted for drug and weapon possession crimes in the District of Minnesota. Before trial, Mr. Tenerelli moved before a magistrate judge to suppress the videotapes as having been illegally seized outside the scope of the warrant. The magistrate judge rejected the argument and ruled that the videotapes were lawfully seized because the warrant authorized the seizure of "photographs" and "the videotapes fit within the common sense description of photographs given that a video tape contains nothing more than a collection of still images." The magistrate judge also rejected arguments that probable cause was stale when the warrant was executed and that the search was conducted with flagrant disregard for the limitations of the warrant. The district court adopted the rulings of the magistrate judge and allowed the videotapes to be entered into evidence against Mr. Tenerelli.

At trial, Deputy Wood and two other officers testified about the controlled buy and about the evidence seized from Mr. Tenerelli's residence. The jury also heard a cooperating witness testify that he purchased methamphetamine from Mr. Tenerelli at both Mr. Tenerelli's residence and Mr. Tenerelli's parents' home and that he had seen Mr. Tenerelli possess a 9mm firearm. Text messages from the seized cell phone corroborated his testimony by reflecting Mr. Tenerelli's efforts to collect a drug debt from the cooperating witness. The testimony was also corroborated by seized drug notes written by Mr. Tenerelli that referenced the cooperating witness. Portions of the

seized videotapes were also used by the prosecution to show Mr. Tenerelli in possession of drugs and a firearm. The jury convicted Mr. Tenerelli of all charges.

## II

## A

Mr. Tenerelli claims his Fourth Amendment rights were violated when the district court denied his motion to suppress the videotapes. In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and the legal question of whether the defendant's Fourth Amendment rights were violated de novo. United States v. Williams, 577 F.3d 878, 880 (8th Cir. 2009). We will affirm the district court's decision on a suppression motion "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." United States v. Perez-Perez, 337 F.3d 990, 993-94 (8th Cir. 2003) (quoting United States v. Layne, 973 F.2d 1417, 1420 (8th Cir. 1992)).

Mr. Tenerelli renews on appeal the same suppression argument that was rejected by the magistrate judge and the district court. Mr. Tenerelli argues that the use of the videotapes at trial was erroneous because the warrant does not specifically authorize the seizure of videotapes from his residence. The government responds by supporting the district court's ruling that the videotapes should fall within the common sense definition of "photographs" and argues in the alternative that the videotapes were properly seized as "other items which would indicate the owner/renter/occupant of the premise[s]."

We agree with Mr. Tenerelli that a videotape is often more than a mere collection of still images and this calls into doubt the district court's rationale. The government is also correct, however, that the contents of a seized videotape might reasonably be expected to indicate the owner of the premises. We need not decide

whether the videotapes were properly seized under either or both of the categories, though, for it is inconsequential to the result. Even assuming that Mr. Tenerelli is correct that the seized videotapes were not within the scope of the warrant, their admission was harmless. See Chambers v. Maroney, 399 U.S. 42, 53 (1970) (evidence admitted in violation of the Fourth Amendment is subject to harmless error review); Chapman v. California, 386 U.S. 18, 24 (1966) ("before a federal constitutional error can be held harmless, a court must be able to declare a belief that it was harmless beyond a reasonable doubt"); see also United States v. Timley, 443 F.3d 615, 623 (8th Cir. 2006); United States v. Noske, 117 F.3d 1053, 1058 (8th Cir. 1997) ("Even if the search violated [the defendant's] Fourth Amendment rights . . . admission of the [evidence] was harmless beyond a reasonable doubt.").

Mr. Tenerelli was convicted for crimes related to possession of drugs and a firearm. The government introduced evidence independent of the videotapes that supports the jury's verdict, including: approximately 100 grams of methamphetamine, drug notes in Mr. Tenerelli's handwriting, a digital scale, drug packaging materials, a 9mm semi-automatic pistol, and 9mm ammunition. Trial testimony established that a loaded 9mm firearm and drugs were found in close proximity to Mr. Tenerelli when officers entered his residence on August 24, 2006.

"[P]ossession may be either actual or constructive," and "constructive possession exists when a person has ownership, dominion, or actual control over the contraband." United States v. Moore, 212 F.3d 441, 445 (8th Cir. 2000) (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)). Like controlled substances, possession of a firearm can be actual or constructive. United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007). Constructive possession "requires knowledge of an object, the ability to control it, and the intent to do so." Id. (citing United States v. Cuevas-Arrendondo, 469 F.3d 712, 715 (8th Cir. 2006)).

There is substantial evidence to support the jury's findings that Mr. Tenerelli was in possession of the firearm, ammunition, and methamphetamine. At the time the search warrant was executed at his residence, Mr. Tenerelli was found in the living room in close proximity to the firearm and methamphetamine. Seized items at the residence, including a cable bill addressed to Mr. Tenerelli and drug notes in his handwriting, indicate that he was in control of the premises. The box found at Mr. Tenerelli's parents' home containing Mr. Tenerelli's driver's license and ammunition for the firearm further evidences Mr. Tenerelli's possession of the firearm.

Additionally, a cooperating witness testified that he had seen Mr. Tenerelli in actual possession of both methamphetamine and the same firearm. The witness testified that he purchased drugs from Mr. Tenerelli for resale at both Mr. Tenerelli's residence and at Mr. Tenerelli's parents' home. Text messages from Mr. Tenerelli to his brother corroborated the witness' testimony and showed Mr. Tenerelli and his brother working to collect a drug debt from the witness. Drug notes evidencing specific drug purchases by the cooperating witness were also obtained from Mr. Tenerelli's residence. We conclude that any error in admitting the videotapes was harmless beyond a reasonable doubt.

B

Mr. Tenerelli also argues that the videotapes should have been suppressed because the probable cause supporting the search warrant was stale. The warrant was executed six days after issuance. This timeframe falls within the allowable range for execution specified by Minnesota and federal law. See Minn. Stat. § 626.15(a); Fed. R. Crim. P. 41(e)(2)(A)(i). Even so, we have said that a search warrant must be executed "promptly." See United States v. Shegog, 787 F.2d 420, 422 (8th Cir. 1986). "In determining whether probable cause dissipated over time, a court must 'evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought.'" United States v. Simpkins, 914 F.2d 1054, 1059 (8th Cir. 1990) (quoting United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983)).

Mr. Tenerelli does not dispute the adequacy of probable cause to support the warrant's issuance, so we look to any intervening facts and circumstances. See, e.g., United States v. Williams, 10 F.3d 590, 595 (8th Cir. 1993) ("The facts supporting the issuance of the warrant on October 22, 1992 . . . substantially correspond to those facts existing on October 30, 1992"); Shegog, 787 F.2d at 422 ("The essential facts . . . had not substantially changed during the eight-day period of delay between the issuance and execution of the search warrant."). Mr. Tenerelli does not demonstrate why the evidence supporting probable cause would have gone stale in the intervening six days and we find no evidence on our own of any changed circumstances between when the warrant was authorized and when it was executed. The ongoing nature of methamphetamine distribution also supports the continued existence of probable cause. See Williams, 10 F.3d at 595. It was reasonable for the officers to conclude that Mr. Tenerelli was likely to possess methamphetamine at his residence when the search warrant was executed.

C

Mr. Tenerelli also argues that all of the seized evidence should have been excluded because the officers acted with flagrant disregard for the limitations of the search warrant. See Marvin v. United States, 732 F.2d 669, 674-75 (8th Cir. 1984) ("[F]lagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search."). Mr. Tenerelli points to the district court's suppression of a closed circuit camera and alleged inconsistencies in the police inventory listing of seized items to argue the officers flagrantly disregarded the scope of the warrant.

However, as we stated in United States v. Decker, "[t]he Supreme Court, however, has expressly dictated that the flagrant disregard standard applies only where the government exceeds the scope of the authorized search in terms of the places

searched, and not to cases in which the government indulges in excessive seizures." 956 F.2d 773, 779 (8th Cir. 1992) (citing Waller v. Georgia, 467 U.S. 39, 43 n.3 (1984)). When officers unlawfully seize certain items but do not flagrantly disregard the limits of the warrant by unreasonably searching unauthorized places, "there is certainly no requirement that lawfully seized evidence be suppressed as well." Waller, 467 U.S. at 43 n.3. Accordingly, we affirm the district court's rejection of this argument as there was no flagrant disregard of the limits of the warrant.

## III

Mr. Tenerelli challenges that the district court erred by allowing Deputy Wood to make certain statements about the controlled drug buy. Specifically, Mr. Tenerelli argues that Deputy Wood's statements describing what he observed when the CRI dialed Mr. Tenerelli's telephone number and ordered methamphetamine from the person who answered are inadmissible hearsay. The government counters that Deputy Wood's statements were not offered for the truth, but were instead just describing verbal acts that he witnessed.

"'Evidentiary rulings are reviewed for abuse of discretion,' giving due 'deference to the district judge who saw and heard the evidence.'" United States v. Two Elk, 536 F.3d 890, 900 (8th Cir. 2008) (quoting United States v. Davidson, 449 F.3d 849, 853 (8th Cir. 2006)). An error admitting hearsay testimony "that does not affect substantial rights must be disregarded." See Fed. R. Crim. P. 52(a). "An error is harmless if we conclude that no substantial rights of the defendant were affected and that the error did not influence or had only a very slight influence on the verdict." United States v. Eagle, 498 F.3d 885, 888 (8th Cir. 2007) (quotation omitted).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "The hearsay rule excludes out-of-court assertions

used to prove the truth of the facts asserted in them. Verbal acts, however, are not hearsay because they are not assertions and not adduced to prove the truth of the matter." Mueller v. Abdnor, 972 F.2d 931, 937 (8th Cir. 1992).

Deputy Wood testified:

Q. On August 16, 2006, did you make any request of the CRI to contact Anthony Tenerelli?

A. Yes, I did.

Q. And were you present when that occurred?

A. Yes, I was.

Q. What did you observe the CRI do without getting into what was said?

A. She dialed his phone number.

Q. Okay. You observed this?

A. Yes, I observed that.

Q. And there was – then what did she do in regard to the call? Was she speaking?
A. Yes.

. . .

Q. What was the intention behind the phone call by the CRI to Mr. Tenerelli?

A. She ordered methamphetamine.

Q. That was the act that she did?

A. Yes.

-9-

(T. Tr. at 228-29.)  Mr. Tenerelli does not point to any particular statement made by Deputy Wood as hearsay.  Instead, Mr. Tenerelli broadly alleges that the effect of the testimony was to elicit an implied assertion of what the CRI told Deputy Wood about aspects of the purchase that were not witnessed by the officers.  Notably, Deputy Wood was cross-examined extensively about his observations of the controlled buy.

We agree with the district court that Deputy Wood's statements regarding what he observed during the controlled buy are not hearsay; no statements of the CRI were offered for the underlying truth.  Instead, Deputy Wood testified about the fact that the order occurred, a verbal act of which Deputy Wood had personal knowledge.  See United States v. Roach, 164 F.3d 403, 410 (8th Cir. 1998) ("testimony that [a person] had asked her to sell drugs involved a verbal act; the government offered the statement not to prove its truth, but that it had been made") (citing Fed. R. Evid. 801(c) advisory committee's note on 1972 proposed rule and United States v. Robinson, 774 F.2d 261, 273 (8th Cir. 1985)).  Further, an out of court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way.  United States v. Brown, 560 F.3d 754, 764 (8th Cir. 2009).  It was not improper for Deputy Wood to testify about his observations that led to the issuance of the search warrant when no statement of the CRI was ever offered to prove an underlying truth.  We find no reversible error in the admission of Deputy Wood's testimony.

Because we find no error in the testimony regarding the CRI, we also reject Mr. Tenerelli's argument that the district court erred by overruling his objection to the government's discussion of the controlled buy during closing arguments.  We reject Mr. Tenerelli's prosecutorial misconduct argument on the same grounds.

IV

Mr. Tenerelli also complains that the admission of Deputy Wood's testimony violates the Confrontation Clause of the Sixth Amendment which provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). Because Mr. Tenerelli did not raise a Confrontation Clause objection at trial, we review his claim for plain error. See United States v. Rodriguez, 484 F.3d 1006, 1013 (8th Cir. 2007).

The only possible testimonial statement at issue is the act of ordering methamphetamine on the phone, which was introduced to explain why the officers were later present to observe what occurred at the home improvement store. This court has noted that regardless of whether an out of court statement is testimonial, a right to confrontation is not implicated if the testimony is not offered or admitted to prove the truth of the matter asserted. Id. at 1013-14 (out of court statement admitted to show defendant's state of mind did not implicate the Confrontation Clause); United States v. Brown, 560 F.3d 754, 764-65 (8th Cir. 2009) (out of court statement admitted to show why an officer conducted his investigation in a certain way did not implicate the Confrontation Clause); see also Crawford, 541 U.S. at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). The CRI's statement was only offered to explain subsequent actions of the officers and Mr. Tenerelli had the opportunity to cross-examine those officers at trial. Because no statement of the CRI was admitted for the truth of the matter asserted, the Confrontation Clause is not implicated here.

V

Mr. Tenerelli argues the district court abused its discretion in denying his motion to exclude the testimony of Ms. Runyon, the government's handwriting expert. Prior to trial, Mr. Tenerelli moved to exclude Ms. Runyon from testifying on the grounds that the defense would not have adequate time to prepare cross-examination nor retain its own expert to refute the opinion because the government failed to provide adequate notice of the testimony as required by Federal Rule of Criminal Procedure 16(a)(1)(G). (R. Doc. 76.) The government countered that the defense was aware of the handwriting samples taken from Mr. Tenerelli's residence and invited to examine them as early as October 2007. The government also argued that it made Ms. Runyon's report available to the defense as soon as it received the report in compliance with Rule 16 and all relevant district court orders.

We review a district court's decision to admit expert testimony for an abuse of discretion. See United States v. Kenyon, 481 F.3d 1054, 1061 (8th Cir. 2007). Rule 16(a)(1)(G) states that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." "A defendant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the contested testimony." Id. (citing United States v. Anderson, 446 F.3d 870, 875 (8th Cir. 2006).

It appears that Ms. Runyon was made reasonably available to defense counsel prior to trial and Mr. Tenerelli did not request a continuance of his trial in order to prepare a defense to counter Ms. Runyon's analysis. Instead, Mr. Tenerelli sought only exclusion to cure the allegedly late disclosure of the contents of Ms. Runyon's proposed testimony. Mr. Tenerelli does not demonstrate how his defense was prejudiced by the allegedly late notice of the contents of Ms. Runyon's testimony or how he would have been able to counter the testimony if it had been earlier disclosed. Mr. Tenerelli does not demonstrate prejudice and we accordingly find no error in the admission of the expert testimony.

## VI

Finally, Mr. Tenerelli argues there is not sufficient evidence to support his convictions. A denial of a motion for judgment of acquittal is reviewed de novo. See United States v. Harris, 352 F.3d 362, 365 (8th Cir. 2003). In reviewing the record, we view the evidence in the light most favorable to the government, resolve evidentiary conflicts in favor of the government, and accept all reasonable inferences drawn from the evidence that support the jury's verdict. United States v. Thomas, 565 F.3d 438, 441 (8th Cir. 2009). "The court will reverse a jury's verdict only where 'no reasonable jury could have found the [accused] guilty beyond a reasonable doubt.'" Id. (quoting United States v. Harmon, 194 F.3d 890, 892 (8th Cir. 1999)).

There is substantial evidence in the record to support Mr. Tenerelli's convictions. Officers seized a loaded 9mm firearm and methamphetamine in close proximity to Mr. Tenerelli at his residence. The officers also seized ammunition, cocaine, cash, drug notes, a digital scale, drug paraphernalia, a cell phone, and a box that contained drugs, Mr. Tenerelli's driver's license, and 9mm caliber ammunition that fit the firearm. A cooperating witness testified about purchasing drugs from Mr. Tenerelli and witnessed Mr. Tenerelli in possession of a firearm. Finally, the drug notes in Mr. Tenerelli's handwriting and the text messages in his cell phone confirmed Mr. Tenerelli was trafficking in methamphetamine. We conclude that the evidence supports the verdict and the district court properly denied Mr. Tenerelli's motion for acquittal of the judgment.

## VII

Accordingly, we affirm Mr. Tenerelli's convictions. We also deny all pending motions.

_____