# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2001

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Jonair Tyreece Moore, also known as | * |
| HighC, also known as Spade, | * |
| | * |
| Appellant. | * |

_____

Submitted: December 17, 2010
Filed: April 6, 2011

_____

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury found Jonair Tyreece Moore guilty of conspiracy to distribute fifty grams or more of cocaine base (crack cocaine) and a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He appeals his conviction, arguing that the prosecutor engaged in misconduct, that the district court[1] erred in admitting certain evidence, and that he was denied effective assistance of counsel. We affirm.

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

## I. Background

On July 22, 2009, a grand jury returned a one-count indictment charging Moore with conspiracy to distribute crack cocaine and cocaine "[b]etween on or about June 1, 2005, and on or about March 31, 2007." Moore entered a plea of not guilty, and the case proceeded to trial.

Fourteen witnesses testified regarding Moore's involvement in the conspiracy and his drug distribution activities. The witnesses had been convicted of federal crimes—mostly drug offenses—and testified pursuant to plea or post-plea agreements. Each agreement included a cooperation provision, stating that the United States would consider requesting a sentence reduction if the individual fully cooperated with law enforcement officials. The witnesses testified that, all told, Moore distributed more than 500 grams of crack cocaine and more than 700 grams of cocaine.

Christopher Evans, a cooperating witness, testified that he purchased one ounce of crack cocaine from Moore in March or April 2008, approximately one year after the time period alleged in the indictment. Moore objected to the admission of the evidence on relevancy grounds, arguing that it was beyond the scope of the indictment. The district court asked whether the government had provided notice of Evans's testimony and whether defense counsel had adequate time to prepare its response. After considering counsel's response that the government had provided the information well before the trial and had supplemented it thereafter, the district court overruled the objection.

The government also introduced video recordings of Moore rapping.[2]  In the first set of recordings, Moore, using his pseudonym Spade, engaged in battle rap with another artist.  Taking turns, they traded insults and boasted about their lifestyles and rapping skills.  The second set of recordings took place outside of what appears to be an apartment complex, and showed Moore with his friends, taking turns rapping.  Moore's lyrics were about drugs, guns, women, and sexuality.  At one point he rapped, "The police all know me and I have narcotics. . . . I brought the rack[3] even though cocaine prices are up."

Moore claimed that the government had failed to prove its case, in part because there were no drugs seized from the conspiracy and there was no evidence of phone calls between Moore and the cooperating witnesses.  He argued that the cooperating witnesses gave false information to the authorities in order to garner sentence reductions.  To support Moore's theory and to impeach the witnesses' credibility, defense counsel vigorously cross-examined the witnesses on their cooperation

---

[2]In an article published in 1992, William Safire explained the etymology of the word "rap" in American language:

> However rap entered American usage, it was widely adopted in black English by the 1960's.  Eldridge Cleaver wrote in a 1965 letter, "In point of fact he is funny and very glib, and I dig rapping with him."  Clarence Major, in his 1970 Dictionary of Afro-American Slang, defined rap as both verb and noun:  "to hold conversation; a long, impressive monologue."  Within a decade, the noun was used attributively in rap music, labeling the rhythmic rhyming lines set to an insistent beat.

William Safire, On Language; The Rap on Hip Hop, N.Y. Times Magazine, Nov. 8, 1992, at 19.

[3]Moore testified that "rack" is slang for $1,000.

agreements, their criminal records, and the inconsistencies between their testimony and the reports prepared by law enforcement officials.

Testifying in behalf of his defense, Moore explained that rapping is his art and that his provocative lyrics were not literally true but were meant to draw a response from the crowd. Moore testified that the witnesses were lying, that he had not met most of them, and that he was never involved in the distribution of crack cocaine or cocaine.

The jury returned a guilty verdict, and Moore was sentenced to 292 months' imprisonment.

## II. Discussion

### A. Alleged Prosecutorial Misconduct

Moore contends that his conviction cannot stand because the government participated in a sprawling conspiracy to secure his indictment. He alleges that the prosecutor either conspired with several law enforcement officers to falsify reports or that the prosecutor fabricated parts of the reports herself. As purported proof of the falsification, Moore cites cross-examination testimony in which eight witnesses were confronted with the reports written by law enforcement officials and asked to explain the inconsistencies between their testimony and the reports.

We do not agree that the inconsistencies prove that the reports were falsified. See United States v. West, 612 F.3d 993, 996 (8th Cir. 2010) ("Merely inconsistent statements do not establish use of false testimony."). In some cases, the witnesses stated that the reports were incorrect. In others, they either stated that they did not remember making the statement to the investigator or acknowledged that their trial testimony was different from the information they had provided to the investigator.

The cross-examination responses served to discredit the witnesses, and defense counsel argued that the inconsistent statements showed the witnesses' willingness to lie under oath in exchange for possible sentence reductions. Without any evidence that the reports were falsified, Moore's claim of prosecutorial misconduct is unfounded. Our review of the record satisfies us that the prosecutor did not engage in improper conduct and that Moore's argument for reversal is without merit.

B. Admission of Christopher Evans's Testimony

Moore next argues that the district court erred in admitting Evans's testimony. Although at trial he argued that the evidence was beyond the scope of the indictment and thus irrelevant, Moore now contends that the evidence was inadmissible under Federal Rule of Evidence 404(b). The government has maintained that the transaction was part of the conspiracy and has acknowledged that there was a variance between the indictment date and the proof at trial.

A variance exists when the evidence "proves facts that are materially different from those alleged in the indictment." United States v. Buchanan, 574 F.3d 554, 564 (8th Cir. 2009) (internal quotations and citation omitted). Although a variance affects the defendant's Sixth Amendment right to adequate notice, the defendant suffers no prejudice if the indictment has fully and fairly apprised him of the charges. Id. at 565. "When the date of the offense is not an element of the charge, we have held on many occasions that a variance between the indictment date and the proof at trial is not fatal so long as the acts charged were committed within the statute of limitations period, and prior to the return date of the indictment." United States v. Stuckey, 220 F.3d 976, 982 (8th Cir. 2000) (gathering cases). We review de novo whether a variance exists and whether it prejudiced the defendant. Buchanan, 574 F.3d at 565.

The indictment alleged that Moore engaged in a conspiracy to distribute crack cocaine and cocaine "[b]etween on or about June 1, 2005, and on or about March 31,

2007." For conviction, the government was required to prove that there was an agreement to distribute the drugs, that Moore knew of the agreement, and that he intentionally joined the agreement. See United States v. Chavez-Alvarez, 594 F.3d 1062, 1066 (8th Cir. 2010) (stating the elements of drug distribution conspiracy). The alleged time frame of the conspiracy was not an element of the crime. See United States v. Ghant, 339 F.3d 660, 662 (8th Cir. 2003) ("Time is not a material element of a conspiracy charge.") (quoting United States v. Turner, 975 F.2d 490, 494 (8th Cir. 1992)). Accordingly, the government was not required to prove the dates of the conspiracy, and—even though Evans's crack cocaine purchase occurred approximately one year after the dates alleged—the acts were committed within the statute of limitations period and prior to the return date of the indictment. Despite the difference between the time period alleged in the indictment and the proof at trial, we conclude that the indictment fully and fairly apprised Moore of the charge against him.[4] Moore thus suffered no prejudice and any variance constituted harmless error.

The district court did not abuse its discretion in admitting Evans's testimony. See United States v. Mitchell, 613 F.3d 862, 866 (8th Cir. 2010) (standard of review). Rule 404(b) does not apply to Evans's testimony because it was not evidence of Moore's other crimes, wrongs, or acts. Rather, it constituted evidence plainly relevant to the existence of and Moore's participation in the conspiracy charged, and thus was properly admitted. See United States v. Stephenson, 924 F.2d 753, 763-64 (8th Cir. 1991).

## C. Admission of Recordings of Moore Rapping

Moore also contends that the district court erred in admitting the recordings of him rapping. He argues that the recordings were improper character evidence that should have been excluded under Rule 404(b). The government argues that the

---

[4]Moore also had actual notice of the evidence well before trial.

recordings were admissible without limitation because Moore's lyrics constituted evidence of the charged conspiracy. Because Moore failed to object at trial, we review the admission of the recordings for plain error. United States v. Faulkner, No. 10-1271, 2011 WL 668057, at *6 (8th Cir. Feb. 25, 2011). We reverse "only if there was an error that was plain and that affected [Moore's] substantial rights and if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks omitted)).

Even if the recordings constituted evidence of prior bad acts, they were nonetheless admissible under Rule 404(b). Moore maintained that he was not involved in a drug conspiracy, and he testified that he never bought or sold crack cocaine or cocaine. The recordings were relevant to prove that he knew cocaine prices, used drug code words, and sold drugs to supplement his income. Accordingly, the evidence was admissible to show his knowledge of drug distribution and his motive for engaging in it. See Fed. R. Evid. 404(b).

Additionally, Moore contends that the recordings should have been excluded as unduly prejudicial under Federal Rule of Evidence 403, which provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Some of Moore's lyrics tended to show that he knew cocaine prices, used drug code words, and sold drugs to supplement his income. Countering the probative value of that evidence, however, was the danger of unfair prejudice flowing from the lyrics used by Moore and the other rappers, which were replete with vulgar, inflammatory, prejudicial language, most of which was irrelevant to whether Moore was involved in a drug distribution conspiracy. Cf. United States v. Gamory, No. 09-13929, 2011 WL 832554, at *8 (11th Cir. Mar. 11, 2011) ("The lyrics presented a substantial danger of unfair prejudice because they contained violence, profanity, sex, promiscuity, and misogyny and could reasonably be understood as promoting a violent and unlawful lifestyle.") Altogether, the recordings

were some twenty minutes in length, and they were shown to the jury without limitation or a limiting instruction. See Fed. R. Evid. 105.

Because there was no Rule 403 objection, we review for plain error. See Olano, 507 U.S. at 734 ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'"). Assuming for purposes of discussion that the recordings should not have been admitted, we conclude that, in light of the overwhelming evidence against him, Moore has failed to persuade us that the recordings affected the outcome of the district court proceedings. See id. (holding that under plain error review the defendant bears the burden of persuasion with respect to prejudice). We thus conclude that their admission did not affect Moore's substantial rights.

### D. Alleged Ineffective Assistance of Counsel

Moore contends that he was denied his Sixth Amendment right to effective assistance of counsel because of his counsel's failure to interview and present certain defense witnesses and to obtain the evidence presented to the grand jury. Our normal practice is to decline to consider ineffective assistance claims on direct appeal. See United States v. Jones, 586 F.3d 573, 576 (8th Cir. 2009) ("[S]uch claims usually involve facts outside of the existing record and are therefore best addressed in postconviction proceedings.") We disagree with Moore's contention that the ineffectiveness of his counsel's representation is readily apparent from the record, and thus we conclude that this claim should be raised in a collateral proceeding under 28 U.S.C. § 2255.

### III.

The conviction is affirmed.

_____