# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3485

_____

United States of America

*Plaintiff - Appellee*

v.

Tyvarus Lee Lindsey

*Defendant - Appellant*

_____

No. 11-3513

_____

United States of America

*Plaintiff - Appellee*

v.

Rashad Raleigh

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: November 15, 2012
Filed: January 9, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Tyvarus Lee Lindsey and Rashad Arthur Raleigh of one count of possessing a firearm to further drug trafficking, and three counts of murder from possessing a firearm to further drug trafficking — in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A), (j)(1). They appeal. Lindsey argues that the district court[1] should have granted his motion to suppress evidence and not admitted prior-acts evidence (and raises various pro se arguments). Both argue that the district court erred in admitting a deceased co-conspirator's statements and denying them acquittal based on insufficient evidence of a conspiracy to distribute drugs. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On March 23, 2007, Lindsey, Raleigh, and two co-conspirators broke into a home where a man was living with his fiancée and her three children. The intruders demanded drugs and money, took jewelry from the fiancée, and ransacked the house. They found 4.5 ounces of crack cocaine in the man's car. After he claimed not to have known the cocaine was there, they began torturing him. One of the intruders shot him dead. Raleigh entered the bedroom where the fiancée and her three children were laying on the floor. He shot and killed the fiancée and her 15-year-old daughter. The fiancée's 10-year-old daughter and son survived. Items stolen included the cocaine, two watches, and a television.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Three days later, two officers were looking at a house for a suspect (unrelated to this case). They knocked on the door. A woman answered. They asked if the suspect was inside. The woman said, "No." She consented to a search of the house. An officer found Lindsey, arrested him for a prior, outstanding warrant, and recovered a cell phone on him. (When Lindsey and Raleigh were indicted for the present crimes, both were serving prison sentences for unrelated, independent state murders. *See* **State v. Raleigh**, 778 N.W.2d 90 (Minn. 2010); **State v. Lindsey**, No. A08-453, 2009 WL 4908842 (Minn. 2009) (unpublished).)

The district court denied Lindsey's motion to suppress the cell phone. Lindsey opposed evidence of a 2005 crime, which the court admitted (and the government referenced in its closing rebuttal argument). He also objected to admitting any statements of Albert "Bozo" Hill, a deceased co-conspirator.

At trial, three witnesses testified to three separate Hill statements. Cell phone records placed Lindsey in the crime-scene vicinity and showed that he communicated with the co-conspirators, including Raleigh, just before the crimes occurred. A witness testified that the co-conspirators left an after-hours party together near the crime scene before the murders. Multiple witnesses testified, and other evidence showed, that Lindsey and Raleigh committed the crimes, including their intent to steal drugs. At the close of the government's case, the court denied the defendants' motions for acquittal. The jury convicted them on all counts.

II.

Lindsey argues that the district court should have suppressed the cell phone, attacking the woman's consent to search the house where officers arrested him. For denial of a suppression motion, this court reviews the district court's factual findings

for clear error and its legal conclusions de novo. ***United States v. Hudspeth***, 518 F.3d 954, 956-57 (8th Cir. 2008) (en banc).

Consent is valid "when an officer reasonably relies on a third party's demonstration of apparent authority" over the premises. ***United States v. Amratiel***, 622 F.3d 914, 915 (8th Cir. 2010); *see **United States v. Matlock***, 415 U.S. 164, 171 (1974) ("[A] third party who possesse[s] . . . [a] sufficient relationship to the premises [may give consent] . . . ."). "Apparent authority exists when 'the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises.'" ***Amratiel***, 622 F.3d at 916 (omission in original), *quoting **Illinois v. Rodriguez***, 497 U.S. 177, 188 (1990). "[S]urrounding circumstances could conceivably be such that a reasonable person would doubt" another's consent "and not act upon it without further inquiry." ***Rodriquez***, 497 U.S. at 188. "Some circuits have . . . require[d] police to go behind appearances to verify third party authority." ***United States v. Almeida-Perez***, 549 F.3d 1162, 1171 (8th Cir. 2008), *citing **United States v. Cos***, 498 F.3d 1115, 1128-31 (10th Cir. 2007), ***United States v. Whitfield***, 939 F.2d 1071, 1074-75 (D.C. Cir. 1991). "[This] circuit . . . has been more liberal about allowing police to form their impressions from context." ***Id.***

In *Almeida-Perez*, consent to a search was valid where a man on the front porch led officers "into the house without knocking" after they asked if they could talk inside. ***Id.*** at 1164-65. The officers did not inquire further or ask "whether he 'had any interest in the house.'" ***Id.*** In *United States v. Hilliard*, 490 F.3d 635, 639 (8th Cir. 2007), consent was valid where a woman allowed officers inside and showed "familiarity with the premises" by picking "clothing off the floor to dress herself." If "someone comes to the door of a domestic dwelling with a baby at her hip . . . that fact standing alone is enough" to show authority to consent to a search. ***Georgia v. Randolph***, 547 U.S. 103, 111 (2006).

Assuming, without deciding, that Lindsey had a legitimate expectation of privacy in the cell phone – and thus has standing to challenge the search[2] – the woman's consent to search the house was nonetheless valid. The two officers testified – credibly according to the district court – that the woman answered the door and showed familiarity with the house by responding "no" when asked if the suspect was there. *Cf.* **United States v. Iron Wing**, 34 F.3d 662, 665 (8th Cir. 1994) (holding that a woman showed familiarity with a house by climbing in through an unlocked window). Then, she verbally consented to the officers' request to walk through the house. Answering the door and showing knowledge of occupants demonstrate greater authority than in *Almeida-Perez*, where a man was outside and simply walked in the house. The woman "exercise[d] . . . privileges that would only be proper for an occupant of the house." **Almeida-Perez**, 549 F.3d at 1171.

Lindsey further argues that the woman's consent was "mere acquiescence to a claim of lawful authority." *See* **United States v. Escobar**, 389 F.3d 781, 785 (8th Cir. 2004), *citing* **Bumper v. North Carolina**, 391 U.S. 543, 548-49 (1968). The officers were in plainclothes. They requested permission to look inside for the suspect and did not show their weapons. *See* **Almeida-Perez**, 549 F.3d at 1165. They (as the district court found) did not coerce consent. *Cf.* **Escobar**, 389 F.3d at 786 (holding that consent to search bags was coerced because the officer falsely "represented a drug-sniffing dog had alerted," and the defendant stated, "Go ahead, you're going to do it anyway."). The woman's consent to search the house was valid. The district court properly admitted the cell phone evidence.

---

[2]The government claims that Lindsey lacks standing to challenge the house search, because he disavowed interest in the phone at the time of his arrest. *See* **United States v. Pierson**, 219 F.3d 803, 806-07 (8th Cir. 2000). Because the search was lawful, this court need not decide whether Lindsey had a legitimate expectation of privacy in the cell phone.

III.

Lindsey claims that the district court erred in admitting prior-acts evidence under Federal Rule of Evidence 404(b). This court reviews for "clear abuse of discretion a district court's evidentiary rulings." **United States v. Chase**, 451 F.3d 474, 479 (8th Cir. 2006).

A.

Lindsey objects to the government's notice of intent to admit evidence of his 2005 crime. "[T]he prosecutor . . . shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." **Fed. R. Evid. 404(b)**.[3] Factors to consider for whether notice was reasonable include: (1) "when the government could have learned . . . of the evidence through timely preparation for trial; (2) . . . prejudice to [the] defendant from lack of time to prepare; and (3) how significant the evidence is to the government's case." **United States v. Green**, 275 F.3d 694, 701 (8th Cir. 2001). In *Green*, the "government provided a printout of the arrest record four months before trial and supplemented the information as it became available." **Id.** at 702. Notice given one week before trial was reasonable. **Id.** at 701.

Here, the government listed Lindsey's 2005 crime in the 2010 indictment – over one year before trial. One month before trial – consistent with the scheduling order – the government provided formal notice to Lindsey. The district court did not abuse its discretion in finding notice timely.

---

[3]A new version of the Federal Rules of Evidence, with stylistic changes only, became effective on December 1, 2011. **United States v. Morales**, 684 F.3d 749, 755 n.3 (8th Cir. 2012). "All quotations [and citations] here are from the rules in effect during [Lindsey and Raleigh's June 2011] trial." **Id.**

Lindsey claims that notice was deficient because it did not reveal the purpose for offering evidence of the 2005 crime. He cites *United States v. Crenshaw*, 359 F.3d 977, 999 (8th Cir. 2004), where this court noted that the Rule 404(b) evidence was only "marginally relevant" to one of the government's bases for using it at trial. *Crenshaw*, however, did not involve notice. *Cf.* **United States v. Robinson**, 110 F.3d 1320, 1326 (8th Cir. 1997) ("The trial court has discretion to reject evidence if the court finds that the notice is unreasonable due to 'lack of . . . completeness.'" (omission in original) (citation omitted)). Lindsey cites no authority that notice must reveal the government's purpose for the evidence. Regardless, the government did file a memorandum that informed Lindsey why it was offering the evidence. The district court did not abuse its discretion in finding notice sufficient.

## B.

According to Lindsey, his 2005 crime was inadmissible propensity evidence and its potential prejudice substantially outweighed its probative value. "[E]vidence of prior crimes must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value." **Crenshaw**, 359 F.3d at 998. He disputes only the first and fourth elements.

## 1.

The government argues that the evidence was relevant to show Lindsey's state of mind — specifically, intent, motive, and foreseeability. This court presumes that Rule 404(b) evidence "is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." **United States v. Smith**, 383 F.3d 700, 706 (8th Cir. 2004). "The district court is afforded broad discretion to admit such evidence . . . ." **United States v. Ceballos**, 605 F.3d 468, 470 (8th Cir. 2010).

Here, the evidence was relevant. Lindsey's 2005 crime involved a drug-related robbery and murder. The district court admitted evidence only of the robbery and Lindsey firing shots, not of the victim's death or Lindsey's subsequent murder conviction. The present crime also involved a drug-related robbery where shots were fired. The evidence was relevant to show that Lindsey intended or could foresee shots being fired during a drug-related robbery, and that his motive – as in the 2005 crime – was to steal drugs and money. *See Crenshaw*, 359 F.3d at 1000-01 (holding that a prior assault conviction was relevant to the defendant's intent to inflict serious bodily harm or death on his victims in the crime at issue); *see also Pinkerton v. United States*, 328 U.S. 640, 646 (1946) (holding that a member of a conspiracy is liable for foreseeable acts of co-conspirators that further the conspiracy). Lindsey has not "demonstrate[d] that [the evidence] serve[d] only to prove [his] criminal disposition." *Smith*, 383 F.3d at 706.

2.

Lindsey's primary contention is that potential prejudice from the 2005 crime substantially outweighed its probative value. This court "will normally defer to [the district] court's judgment" whether the prejudicial effect of admitting Rule 404(b) evidence substantially outweighs its probative value. *United States v. Halk*, 634 F.3d 482, 488 (8th Cir. 2011).

In *Crenshaw*, the defendant was on trial for murder with a firearm. *Crenshaw*, 359 F.3d at 981. The government introduced a prior assault conviction where the defendant shot a man "four times in the stomach." *Id.* at 1001. "The potential prejudice was magnified by the government's repeated and often graphic references to the conviction during the trial." *Id.* Moreover, "the jury never learned from the government that the 1995 conviction had any relevance to the issue of intent," and the district court never mentioned intent in its instructions. *Id.* The government invoked

intent "for the first time during oral argument" on appeal. *Id.* at 999. The risk of prejudice from the prior assault conviction substantially outweighed its probative value. *Id.* at 1002.

In *Halk*, the defendant was on trial for a firearms offense. *Halk*, 634 F.3d at 487. The government offered two prior firearms offenses to prove that he knowingly and intentionally possessed the firearm at issue. *Id.* The district court "minimized the risk of unfair prejudice by disallowing any mention of the word 'murder' and restricting the government's description of [one of the offenses]." *Id.* at 488. The district court also gave a limiting instruction. *Id.* The risk of prejudice did not substantially outweigh the evidence's probative value. *Id.*

Here, any potential prejudice did not substantially outweigh the 2005 crime's probative value. Unlike in *Crenshaw*, the government did argue to the jury that Lindsey's 2005 crime showed intent, motive, and foreseeability. As in *Halk*, the district court prohibited mention of his murder conviction. The court also instructed the jury that they could use the evidence only "to determine such issues as intent and motive." "The presence of a limiting instruction diminishes the danger of any unfair prejudice arising from the admission of other acts." *Id.* A witness testified to Lindsey robbing and firing shots at the victim, but did not discuss the victim's death. In closing rebuttal argument, the government briefly noted that the jury had "heard the outcome" of the trial for the 2005 crime. The district court immediately gave a curative instruction. The government neither repeatedly nor graphically referenced the 2005 crime.

The government here consistently stated that the 2005 crime was probative of Lindsey's intent to murder the victims "if necessary to accomplish the robbery," and of the foreseeability (or lack of mistake) that someone could be killed during an armed robbery. *See* **18 U.S.C. § 1111** (requiring the government to prove that the

killing was with "malice aforethought"). Rule 404(b) evidence is admissible when the defendant "places his state of mind in issue" by a "general denial defense," as Lindsey did here. *Anthony*, 537 F.3d at 866. The potential prejudice – limited by the restricted version of the evidence and the court's limiting instructions – did not substantially outweigh the 2005 crime's probative value. The district court did not abuse its discretion in admitting evidence of Lindsey's 2005 crime.

IV.

Both Lindsey and Raleigh assert that the district court erred in admitting three statements of Hill, a deceased co-conspirator. They argue that the first statement violated the Sixth Amendment's Confrontation Clause – requiring de novo review – and that all three statements were inadmissible under Federal Rule of Evidence 803(b)(3) – requiring abuse-of-discretion review. *United States v. Honken*, 541 F.3d 1146, 1159, 1161 (8th Cir. 2008). The government counters that Lindsey and Raleigh did not object at trial to the first and third statements, so review is for plain error. *See United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010) (holding that plain error review applies to unpreserved Confrontation Clause claims); *United States v. Hyles*, 521 F.3d 946, 959 (8th Cir. 2008) (holding that plain error review applies to unpreserved evidentiary claims).

Before trial, Lindsey (but not Raleigh) objected to all potential Hill statements, which could include those against interest under Rule 804(b)(3). "Once the court makes a *definitive* ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." *Morales*, 684 F.3d at 755 (alteration omitted) (emphasis in original), *quoting* **Fed. R. Evid. 103(a)**.

After jury selection, the district court held a colloquy and stated:

> [A]s to any statement that is being offered under the statement against interest exception, *we'll have to have the proper foundation laid before that can come in.* . . . [A]s to the statements of Mr. Hill . . . I don't hear anything *now* that would render them inadmissible. Again, *you are going to have to actually lay the foundation* [at trial] that you've said, but *if* it's as [the government has] described it . . . it has no confrontation problems, and *Brutin* [sic], and its redaction agreements and so on don't apply. The whole Sixth Amendment is inapplicable in the nontestimonial statement context, and so that will be allowed.

Trial R. 152 (emphases added). This "pretrial ruling was tentative" and ambiguous. *United States v. Echols*, 346 F.3d 818, 820 (8th Cir. 2003). Although the court did not "expressly invite[] [Lindsey and Raleigh] to raise the issue during trial," *id.*, it nonetheless "never made a definitive ruling," *United States v. Frokjer*, 415 F.3d 865, 872 (8th Cir. 2005). Thus, Lindsey or Raleigh needed to object at trial to preserve the issue for appeal. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). Because neither objected to the first and third Hill statements, this court reviews their admission for plain error. Both objected at trial to the second Hill statement, necessitating abuse-of-discretion review.

## A.

An officer testified to Hill's first statement giving his cell phone number. Lindsey and Raleigh claim this violated the Confrontation Clause, which "bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012). Plain-error review requires that they show that "(1) there was an error that was not affirmatively waived, (2) the error was . . . clear and obvious, (3) the error affects .

. . substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Their claim fails on plain-error review. Because the officer learned Hill's cell phone number while questioning him about the murders, the statement was testimonial. *See* ***Crawford v. Washington***, 541 U.S. 36, 53 n.4 (2004). Neither Lindsey nor Raleigh had a prior opportunity to cross-examine Hill. Assuming, without deciding, that there was plain error, it nonetheless did not affect their substantial rights. *See* ***United States v. Butler***, 238 F.3d 1001, 1005 (8th Cir. 2001) ("A defendant's rights are substantially affected when an error prejudicially influenced the outcome of the district court proceedings.").

Even without Hill's cell phone number, the evidence supporting their convictions was overwhelming. *See* ***United States v. Moore***, 639 F.3d 443, 448 (2011) (holding that no substantial right was affected where other evidence supporting guilt was "overwhelming"). Cell records showed communication not only between Lindsey and Hill, but also between Lindsey and the other two co-conspirators, including Raleigh. These records placed the conspirators in the vicinity of the crime scene just before the murders and showed no communication during the time of the crimes. The fiancée's surviving daughter testified to the robbery and murders. The owner of the after-hours establishment testified that the conspirators left the party together just before the crimes. One of Lindsey's associates testified that Lindsey tried to recruit him for the crime. As others testified, Lindsey confessed his involvement, including trying to sell the stolen items. Evidence also included his admissions during recorded jail calls.

Evidence specifically against Raleigh included the gun used to kill the fiancée and her oldest daughter. A number of witnesses testified that Raleigh confessed to the murders. Moreover, the government could have introduced the phone number

through another witness without using Hill's statement. "In light of the overwhelming evidence against" Lindsey and Raleigh, admission of the statement did not affect their substantial rights. *Id.*

Lindsey and Raleigh also claim that the district court erred in admitting the statement under Rule 804(b)(3), which requires that the statement of an unavailable witness be against penal interest and be sufficiently trustworthy. **Fed. R. Evid. 804(b)(3)**. Even if there was plain error, it did not affect their substantial rights, because other evidence supporting their convictions was overwhelming.

B.

The owner of the after-hours establishment, where the conspirators partied before the crimes, testified to the second Hill statement: Hill told him to "make sure we was at the party all night." Lindsey and Raleigh assert that this statement was not against Hill's penal interest and lacked "corroborating circumstances that clearly indicate its trustworthiness." *Id.*

This statement was not hearsay. "'Hearsay' is a statement . . . offered in evidence to prove the truth of the matter asserted." *United States v. Buchanan*, 604 F.3d 517, 521 (8th Cir. 2010) (citation omitted). The statement was not offered to prove the truth of the matter asserted — that Hill wanted the witness to tell police that the conspirators were at the party all night. Rather, the statement is a verbal act — that Hill tried to establish an alibi, regardless of whether he actually wanted the witness to make sure they were at the party all night. *See Tenerelli*, 614 F.3d at 771 ("Verbal acts . . . are not hearsay because they are not assertions and not adduced to prove the truth of the matter."); *United States v. Roach*, 164 F.3d 403, 410 (8th Cir. 1998) ("[T]estimony that [a person] had asked [a witness] to sell drugs involved a verbal act; the government offered the statement not to prove its truth, but that it had

been made."). The government did not argue this below, but this court "may affirm a district court's judgment on any basis supported by the record." *United States v. Jones*, 643 F.3d 257, 258 (8th Cir. 2011). Because the statement was not hearsay, it was properly admitted.

## C.

The final Hill statement was an admission that he was present at the murders and helped torture the male victim. Lindsey and Raleigh again assert that this statement was not against Hill's penal interest and lacked trustworthiness. Because they did not object at trial, review is for plain error.

To be against penal interest, "the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true." *United States v. Honken*, 541 F.3d 1146, 1161 (8th Cir. 2008). Admitting to torturing and participating in murder was against Hill's penal interest.

Corroborating circumstances that determine trustworthiness include:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration[,] and [(6)] the relationship between the speaker and the witness.

*Halk*, 634 F.3d at 490, *citing United States v. Rasmussen*, 790 F.2d 55 (8th Cir. 1986). Even if the statement lacked trustworthiness, its admission did not affect any substantial right. *See Hyles*, 521 F.3d at 957 (holding the defendant's "substantial rights were not infringed" because the evidence "clearly show[ed] that [he]

participated in both conspiracies"). As described in Point A, other evidence of guilt was considerable. Admission of the third statement does not require reversal.

V.

Lindsey and Raleigh argue that the evidence was insufficient to prove a drug conspiracy. This court reviews "de novo the sufficiency of the evidence and view[s] that evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." *Johnson*, 688 F.3d at 502. This court will overturn the convictions "only if no reasonable jury could have found [them] guilty beyond a reasonable doubt." *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007).

The government had to prove that Lindsey and Raleigh knowingly joined a conspiracy to distribute drugs. *See United States v. Jensen*, 141 F.3d 830, 833-34 (8th Cir. 1998). "[M]ere buyer/seller exchanges . . . do[] not establish the existence of a conspiracy." *Id.* at 834. However, "the agreement need not be formal; a tacit understanding will suffice." *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995). "The government may . . . prove the existence of such a plan wholly by circumstantial evidence or by inference from the actions of the parties." *United States v. Vazquez-Garcia*, 340 F.3d 632, 637-38 (8th Cir. 2003).

In *United States v. Eneff*, 79 F.3d 104, 104-05 (8th Cir. 1996), one witness testified that he had previously bought drugs from the defendant. The co-conspirator testified that he had had "business dealings" with the defendant. *Id.* at 105. Phone records "tended to show" communication between the co-conspirator and a third party "during the period of the alleged conspiracy." *Id.* This evidence was sufficient to prove a drug conspiracy. *Id.*

Here, the evidence was more substantial than in *Eneff*. A witness testified that Lindsey tried to recruit him to join a plan to rob a known drug dealer of two kilograms of cocaine stored at the male victim's house. An expert testified that this was a distribution amount. *Cf.* **United States v. Jones**, 600 F.3d 985, 990 (8th Cir. 2010) (possessing "234.98 grams of a substance containing cocaine base . . . alone would be sufficient circumstantial evidence for the jury to [find] . . . intent to distribute"). Lindsey admitted to the witness that they tortured and killed the man because he would not give them drugs. The fiancée's surviving daughter testified that the conspirators demanded drugs and money. Other evidence showed that the targeted drug dealer's car was parked at the male victim's house the day of the crimes. Additional witnesses testified that the conspirators intended to steal drugs. Another witness testified to prior incidents of Lindsey selling drugs obtained from robbing drug dealers.

Testimony also showed that Raleigh joined the conspiracy to steal drugs from the house. He admitted this to multiple witnesses. And the conspirators did steal 4.5 ounces (127.57 grams) of crack cocaine — a distribution amount. *See* **United States v. Wheat**, 278 F.3d 722, 741 (8th Cir. 2001) ("[T]he jury could have inferred that 63.03 grams [of cocaine] is a quantity sufficiently large that [the defendant] intended to distribute it . . . ."); **United States v. Franklin**, 728 F.2d 994, 998 (8th Cir. 1984) (noting that intent to distribute can be inferred from possessing 147.09 grams of cocaine), *citing* **United States v. Muckenthaler**, 584 F.2d 240, 247 (8th Cir. 1978). Lindsey and Raleigh attack the credibility of the witnesses. "The jury has the responsibility of resolving conflicts or contradictions in testimony, and [this court] resolve[s] any credibility issues in favor of the verdict." **Johnson**, 688 F.3d at 502. There was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Lindsey and Raleigh joined a conspiracy to distribute drugs.

-16-

## VI.

Finally, Lindsey raises various arguments pro se.  This court has reviewed his pro se brief and summarily affirms as to these issues.  *See* **8th Cir. R. 47B**; *see, e.g.*, ***United States v. Ruiz***, 446 F.3d 762, 777 (8th Cir. 2006).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____