UNITED STATES of America,
Plaintiff,

v.

Heather Maria CEBALLOS, Defendant.

No. 1:07–cr–00068.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 16, 2009.

court is doubtful the plaintiff will be able to prove all of the necessary factual allegations).

Nicole M. Proesch, United States Attorney's Office, Des Moines, IA, for Plaintiff.

Angela Lynnette Campbell, Dickey & Campbell Law Firm PLC, Nicholas Todd Drees, Federal Public Defenders Office, Des Moines, IA, for Defendant.

## ORDER ON MOTION IN LIMINE

ROBERT W. PRATT, Chief Judge.

Before the Court is the Government's Motion in Limine in the above captioned

case, filed on November 13, 2008. Clerk's No. 153. Heather Ceballos ("Defendant") filed a resistance on November 23, 2008. Clerk's No. 158. The Government filed a Reply on November 26, 2008. Clerk's No. 162. The Court held a hearing on the matter on December 30, 2008. Clerk's No. 187. The matter is now fully submitted.

## I. PROCEDURAL BACKGROUND

On September 18, 2008, a grand jury returned a third superceding indictment charging Defendant with two counts of knowingly and intentionally aiding and abetting the distribution of methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.[1] Clerk's No. 145. Defendant timely notified the Government of its intent to present evidence, including expert testimony, that would: (1) negate the voluntariness of Defendant's action, (2) establish a coercion defense, and (3) establish a duress defense. Clerk's No. 148 at 1. To preempt Defendant, the Government filed the present motion in limine. In this motion, the Government requests that the Court exclude all such evidence as either irrelevant under Federal Rule of Evidence 402 or improper opinion testimony under Federal Rule of Evidence 704(b). Pl.'s Mot. ¶¶ 1, 3. Defendant responded by asserting that the proposed evidence is relevant and, additionally, challenges the Court's authority to make such a determination prior to trial. Def.'s Resp. at 2–5. The Government replied by reiterating its original arguments. Pl.'s Reply at 3–8.

## II. ANALYSIS

### A. *The Court's Authority*

 Defendant first challenges the Court's authority to decide the admissibility of this evidence prior to trial. Defendant argues that the Court cannot entertain the Government's motion before trial because the cases the Government cites do not provide support for such authority and because she is permitted to lay the foundation for a duress defense at trial, which will then allow the Court to rule on whether she is entitled to a jury instruction on duress. Def.'s Resp. at 3–4. Defendant also argues that excluding this evidence prior to the Government making its case-in-chief would undermine the jury's role. *Id.* at 5. The Court disagrees with Defendant.

 Federal Rule of Evidence 104(a) states: "Preliminary questions concerning ... the admissibility of evidence shall be determined by the court...." The Court has the inherent authority to make these evidentiary determinations through an order on a motion in limine.[2] *See Luce v. United States,* 469 U.S. 38, 38 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (stating: "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."). Moreover, the Court can conduct a hearing on a motion in limine prior to the jury trial. *See United States v. Andrade–Rodriguez,* 531 F.3d 721, 723 (8th Cir.2008) (declining to take issue with the lower court holding

1. Count One of the indictment relates to Defendant allegedly acting as an interpreter during a drug transaction for her boyfriend, Jesus Gomez ("Gomez"), on October 17, 2007. Clerk's No. 145. Count Two relates to Defendant allegedly interpreting another drug transaction for Gomez one week later on October 25, 2007. *Id.*

2. Alternatively, the Government could have made a pretrial motion under Federal Rule of Criminal Procedure 12(b), which states: "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issues."

a pretrial conference at which it heard offers of proof regarding the Government's motion in limine to exclude evidence relating to a necessity defense); *United States v. Blankenship,* 67 F.3d 673, 677–78 (8th Cir.1995) (declining to find fault with a lower court's refusal to permit defendant to present evidence of duress following a pretrial hearing on the matter). Indeed, Federal Rule of Evidence 103(c) implies that the better practice is to decide admissibility questions outside the presence of the jury, if possible, so as to prevent "inadmissible evidence from being suggested to the jury...." Therefore, the Court clearly has the authority to entertain and rule on the Government's motion in limine before trial.

■ Contrary to Defendant's assertions, the Court's exercise of this authority does not violate any of Defendant's rights or undermine the role of the jury. A defendant has no right to offer and a jury has no right to hear inadmissible evidence. *See Taylor v. Illinois,* 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (stating that a defendant does "not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence"). Evidence that is either irrelevant or improper opinion testimony is inadmissible. *See* Fed.R.Evid. 402, 704(b). Consequently, should the Court find Defendant's evidence irrelevant or improper, the Court's exclusion of it would not violate either Defendant's rights or undermine the jury. Indeed, to permit Defendant to present inadmissible evidence would be to tacitly encourage the jury to decide a case upon illegitimate grounds and disregard its duty to apply the law to the facts.

### B. *Relevance and Propriety*

Defendant next asserts that her proposed evidence is both relevant and proper under the Federal Rules of Evidence, and as such, is admissible. Defendant's proposed evidence includes family members' testimony regarding the abuse she received from Gomez, expert testimony on her mental condition and domestic violence in general, and Defendant's testimony about the abuse. According to Defendant, this proposed evidence is relevant because it will negate the voluntariness of her actions and establish a "coercion/duress" defense. She also argues that the expert testimony will not violate the expert opinion rule contained in Federal Rule of Evidence 704(b).

■■ "All relevant evidence is admissible, except as otherwise provided by the Constitution ... or by these rules...." Fed.R.Evid. 402. "Evidence is relevant so long as it has 'any tendency,' however slight, 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Holmes,* 413 F.3d 770, 773 (8th Cir.2005) (quoting Fed. R.Evid. 401) (other citations omitted). "The threshold for relevance is quite minimal." *Id.* (internal quotation and citations omitted). "Relevance is established by any showing, however slight, that makes it more or less likely that the defendant committed the crime in question." *United States v. Casares–Cardenas,* 14 F.3d 1283, 1287 (8th Cir.1994). Moreover, evidence of duress and coercion is relevant only if a defendant presents sufficient facts, i.e., a prima facie case, on each of the elements of these affirmative defenses. *See generally United States v. Jankowski,* 194 F.3d 878, 882–83 (8th Cir.1999); *Blankenship,* 67 F.3d at 677–78; *United States v. Campbell,* 609 F.2d 922, 924 (8th Cir.1979) (citing *United States v. Gordon,* 526 F.2d 406, 408 (9th Cir.1975)). Finally, as stated be-

fore, "[e]vidence which is not relevant is not admissible." Fed.R.Evid. 402.

### 1. The relevance of Defendant's evidence to the voluntariness of her actions.

 Defendant's proposed evidence is irrelevant as to whether she committed the substantive crimes charged in the indictment. Both counts charge her with "knowingly and intentionally" aiding and abetting the distribution of methamphetamine and, as such, the Government must prove beyond a reasonable doubt that she possessed this state of mind while committing the offenses. Clerk's No. 145; *see Dixon v. United States,* 548 U.S. 1, 5–6, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006). The term "knowingly merely requires proof of knowledge of the facts that constitute the offense," and the term willfully requires proof that "the defendant acted with knowledge that his conduct was unlawful." *Id.* at 5, 126 S.Ct. 2437 (quoting *Bryan v. United States,* 524 U.S. 184, 192, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)). At the motion in limine hearing, Defendant admitted to translating both drug conversations despite knowing it was unlawful to do so. Tr. at 46.[3] Thus, by Defendant's own admission, she was aware of the facts that constituted the offense and knew that her actions were illicit. At most, Defendant is challenging the voluntariness of her actions based upon duress, much as the defendant in *Dixon* did. However, the Supreme Court rejected such an argument, stating: "the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully," even though it may allow a Defendant to avoid liability under an affirma-

tive defense of duress. *Dixon,* 548 U.S. at 7, 126 S.Ct. 2437. Therefore, the Court must conclude that Defendant's proposed evidence is irrelevant as to whether she committed the crime voluntarily.

### 2. The relevance of Defendant's evidence to her coercion defense.

 Defendant's proposed evidence is relevant to whether she was coerced into committing both crimes, although portions of the proposed expert testimony violate the Federal Rules of Evidence. In order for Defendant to make a prima facie showing of coercion, and thus make her evidence of abuse and distress relevant, she must offer proof on all of the following:

> Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion....

*United States v. Logan,* 49 F.3d 352, 359 (8th Cir.1995) (quoting *United States v. May,* 727 F.2d 764, 765 (8th Cir.1984)). According to this test, Defendant must first have had an actual apprehension of immediate death or serious bodily injury. Defendant testified that Gomez threatened to hit her on both occasions if she did not translate the drug conversations. Tr. at 46. Additionally, Defendant testified that Gomez beat her with either a belt or a cord whenever she refused his requests, in addition to choking her once when she tried to leave. Tr. 40, 42. Her family members' testimony seemingly corroborates her statements, as it includes numerous accounts of Gomez's severe violence towards Defendant. The two experts also

---

**3.** All transcript references refer to the daily unedited Realtime transcript provided to the Court by the reporter.

corroborate Defendant's statements, as Luis Rosell can testify to Defendant's precarious and fearful mental condition,[4] and Sonia Konrad ("Konrad") can testify to the learned helplessness and ongoing implicit threats of violence in many abusive relationships.[5] Ex. A; Tr. 55–57. Therefore, not only does the Court find that Defendant has made a prima facie showing on this element of the coercion defense, but the Court also finds that Defendant has established how all of her proposed evidence is relevant to proving this part of the test.

 Defendant has also made a prima facie showing on the second element of the coercion defense, although not all of her proposed evidence is relevant to this prong of the test. Defendant's subjective fear of immediate death or serious bodily injury must also be "well-grounded" or objectively reasonable. The Court agrees with the Ninth Circuit in that the jury may consider "the objective situation in which the defendant was allegedly subjected to duress."[6] *United States v. Johnson*, 956 F.2d 894, 898 (9th Cir.1992) (superseded by regulation on other grounds as recognized in *United States v. Martinez–Martinez*, 369 F.3d 1076, 1089–90 (9th Cir. 2004)). According to the Ninth Circuit, "[f]ear which would be irrational in one set of circumstances may be well-grounded if the experience of the defendant with those applying the threat is such that the defendant can reasonably anticipate being harmed on failure to comply." *Id.* In other words, the objective test is seen in the perspective of an individual who has suffered the defendant's prior domestic abuse. Defendant's evidence is sufficient to establish a prima facie case and relevant in this context because her testimony and the testimony of her family members, including her sister's statements that Gomez beat Defendant almost to the point of unconsciousness, clearly tend to establish the objective seriousness and constant immediacy of the threat Gomez posed. Tr. at 20. Consequently, while Gomez's general threat to hit Defendant would not ordinarily suffice as a well grounded fear of death or serious bodily injury, the context of the threat combined with the history of severe domestic violence provides the requisite objective fear.[7] Moreover, Konrad's testi-

4. The Court will note that at least two pages of Rosell's report include statements regarding the law on coercion, duress, and voluntariness and statements applying that law to Defendant. Ex. A at 7–8. This is a clear violation of the Federal Rules of Evidence including Rule 704(b), which prohibits an expert from stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Consequently, the Court will meet with the parties the morning of trial to discuss how best to redact the document should Defendant wish to present it as evidence.

5. The Court also notes that Konrad's testimony would be admissible independent of Defendant's coercion defense because it is relevant to explain why domestic violence victims like Defendant repeatedly change their stories as she did. *See Arcoren v. United States*, 929 F.2d 1235, 1239–41 (8th Cir.1991) (upholding a district court's decision to allow the Government to call an expert witness to explain why victims of domestic violence often change their story due to their victimization).

6. Duress and coercion are used synonymously in the Ninth Circuit. *United States v. Michelson*, 559 F.2d 567, 567 n. 3 (9th Cir.1977) (stating: " 'Coercion' and 'duress' are used interchangeably throughout the literature on the subject, and we use these terms coextensively"). Additionally, the Ninth Circuit uses the same coercion test as the Eighth Circuit. *Id.* at 567.

7. The Government makes the specific argument that Gomez's threats were insufficiently immediate as a matter of law, much as the threat in *United States v. Harper*, 466 F.3d 634 (8th Cir.2006), was insufficient. Tr. at 81. However, *Harper* involved a threat of death

mony about the patterns of domestic violence also tends to establish an objective fear of death or serious injury, despite Gomez never telling Defendant that he was going to kill or maim her, because Konrad's testimony includes statements about how threats can be ongoing and implicit and how choking is a sign that the abuse is very serious and may become fatal.[8] Tr. at 55–56, 58.

 Finally, Defendant's proposed evidence makes a prima facie showing on the remaining element of the coercion defense. An objective standard governs whether or not a defendant had a full opportunity to avoid the illicit act without danger of death or serious bodily injury. *United States v. Harper*, 466 F.3d 634, 648 (8th Cir.2006) (citing *Jankowski*, 194 F.3d at 883). The testimony at the limine hearing indicates that, on both occasions, Defendant was present with Gomez when he threatened her and when Defendant subsequently translated the conversation for him. *See* Tr. at 46. The Government argues that this is insufficient because Defendant "could have done something, went to law enforcement, said something." Tr. at 85. The Court disagrees with the Government, however, because Defendant has made a prima facie case that at the time Gomez made the threats, she either had the choice to comply or face an assault. On both occasions, no time seemingly existed to go to the police, and the Court cannot conceive of what Defendant could

have said to assuage Gomez. Therefore, Defendant has made a prima facie showing of all the elements of coercion, in addition to showing how her evidence bears on the coercion defense.

3. *The relevance of Defendant's evidence to her duress defense.*

 Defendant's final contention is that her proposed evidence is relevant to establishing the affirmative defense of duress. To establish this defense, a defendant must offer proof that:

1) [s]he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
2) that [s]he had not recklessly or negligently placed [her]self in a situation in which it was probable that [s]he would be forced to commit a criminal act; 3) that [s]he had no reasonable, legal alternative to violating the law; and 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*Jankowski*, 194 F.3d 878, 882–83 (quoting *United States v. Lomax*, 87 F.3d 959, 961 (8th Cir.1996)). This test is virtually identical in substance to the coercion test except that a defendant has the additional burden of showing that "[s]he had not recklessly or negligently placed himself" in the situation.[9] *Id.* Based upon her exper-

---

"on a prior, separate occasion." 466 F.3d at 648. Here, Defendant faced present threats of violence by Gomez, and his prior history of violence made his threats objectively more serious. Furthermore, this case involves a standing threat of immediate violence, unlike *Harper*.

8. In contrast, the Court finds Rosell's testimony about the mental condition of Defendant before, during, or after the two incidents ir-

relevant because her subjective mental state is of no consequence under an objective test.

9. Indeed, there seems to be some confusion in the jurisprudence as to whether duress and coercion are, in fact, different tests and as to what circumstances warrant which defense. *See United States v. Gamboa*, 439 F.3d 796, 816 (8th Cir.2006) (referring to duress and coercion as the same affirmative defense before listing the aforementioned duress elements); *May*, 727 F.2d at 764 (reciting the

tise in the area of domestic violence, Konrad testified that it is not reckless or negligent for a woman to become involved in an abusive relationship because of the often subtle and effective manipulations of the abuser. Tr. at 53–55. Indeed, the mere fact that domestic abuse spans every social and economic layer in our society is an indication of the effectiveness of abusers, not the carelessness of victims. *Id.* Konrad also testified that one tactic abusers utilize to gain leverage over their victims is to force them to commit an illicit act, which then allows the abuser to essentially blackmail the victim into compliance. *Id.* at 52. Thus, the Court finds that Defendant has made a prima facie case that it was not negligent or reckless for her to be in an abusive relationship where the abuser would later try to force her to commit a crime. The Government attempts to counter by arguing it was at least negligent or reckless for Defendant to remain with Defendant after his first request for her to translate, which would preclude a duress defense for Defendant's second translation a week later. However, the Court cannot conclude this as a matter of law because of Gomez's ongoing threat of violence should Defendant refuse his requests or attempt to leave. In fact, it is the Court's experience, as born out by this case, that the most dangerous time for a victim is often immediately following a separation from the abuser. Therefore, the Court finds that Defendant has made a prima facie showing of duress based upon Konrad's testimony and the Court's coercion discussion.

coercion test and calling it a duress defense); *Blankenship,* 67 F.3d at 677–78 (regarding the test for coercion and the test for duress, which the court called justification, as separate tests). The Eighth Circuit model criminal jury instructions also provide little insight on the issue as it uses the terms interchange-

### III. CONCLUSION

For the foregoing reasons, Defendant may present her evidence of coercion and duress; however, Rosell's report must be redacted if Defendant wishes to offer it into evidence at the trial. Accordingly, the Government's Motion (Clerk's No. 153) is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

ably and notes how the terms are used synonymously in the literature on the subject. *See* Committee Comments for § 9.02. The Court will not seek to resolve this issue until such time as is necessary because Defendant has made a prima facie showing under both tests.