# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2557

_____

United States of America,          *
                                            *

          Appellee,          *
                                            *   Appeal from the United States

           v.              *   District Court for the
                                            *   District of Iowa.

Jorge Juarez Morales,         *
                                            *

          Appellant.        *

_____

Submitted: February 17, 2012
Filed: July 12, 2012

_____

Before RILEY, Chief Judge, WOLLMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Jorge Juarez Morales of one count of conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and two counts of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Morales appeals his conviction, arguing that the district court[1] erred by (A) requiring Morales to disclose his firearms expert; (B) prohibiting the firearms expert from testifying; (C) refusing to instruct the jury on Morales's coercion defense; (D) refusing to instruct the jury on Morales's defense theory; and (E) prohibiting

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Morales's counsel from presenting his defense theory in closing arguments. We affirm.

## I. *Background*

A grand jury indicted Morales on one count of conspiring to distribute 50 grams or more of methamphetamine and two counts of distributing five grams or more of methamphetamine after he sold methamphetamine to a confidential informant in Hampton, Iowa, on two separate occasions. The parties filed a stipulated discovery order, which provided that they would "exchange a list of prospective witnesses and a list of prospective exhibits no later than five working days prior to trial." The district court, in a separate scheduling order, also instructed the parties to hold an instructions conference "[a]t least *14 days* before the commencement of trial" and to "attempt to agree on the form and content" of many of the "case-specific instructions," including "any 'theory of defense' instruction(s)" that the defendant requested. The court also provided that "[i]n the extraordinary circumstances in which a defendant might be prejudiced by revealing a theory of defense prior to trial, the defendant may submit a proposed 'theory of defense' instruction for the court's *in camera* review *14 days* before trial."

On March 14, 2011, two weeks before trial, Morales moved for *in camera* review of his theory-of-defense instruction, which stated in part:

> In early May 2010, [Morales] was cleaning his apartment. He opened the outer casing of his vacuum cleaner in an effort to resolve a malfunction. Inside the vacuum cleaner which [Morales] had loaned to his friend and neighbor, Luis Rodriguez-Garabito, he found a bag filled with an unknown but suspicious substance. When [Morales] found the bag, he stopped what he was doing and went to Luis's apartment.

> When he entered Luis'[s] apartment there were two individuals whom he recognized present. He knew them by their first names, Juan and 'Tine . . . . When they answered the door[,] [Morales] immediately suspected Juan and 'Tine's involvement in hiding the bag in his vacuum

-2-

cleaner. [Morales] confronted them both for using his vacuum to hide what he assumed to be drugs.

In response, 'Tine produced a semiautomatic pistol, "racked the slide," to aggressively demonstrate that it was loaded and ready to fire, and, using foul language, threatened [Morales's] family in the United States and in Mexico if [Morales] went to the police. Moreover, 'Tine indicated [Morales] now would have do 'Tine unspecified favors in exchange for the safety of [Morales's] family. . . .

Thus, according to Morales's proposed theory-of-defense instruction, Morales twice sold methamphetamine for 'Tine because 'Tine coerced him "into committing illegal acts for which he had no reasonable alternative." Morales also submitted two alternative coercion instructions for the court to consider. The district court denied Morales's motion, stating that it would "determine at the close of evidence whether [a coercion] instruction is appropriate, and if so, how to word the instruction." The district court did not specifically address the theory-of-defense instruction.

At a pretrial conference on March 21, 2011, the district court indicated that it would enforce the stipulated discovery order and reminded the parties to "make sure they have disclosed everything that the order requires." Later that day, Morales filed a motion for ex parte notice of defense witnesses and exhibits, arguing that disclosure of certain witnesses and exhibits "*before the close of the Government's evidence*" would violate his Fifth and Sixth Amendment rights. Because the expert's testimony would indicate that a member of the alleged conspiracy, 'Tine, possessed a firearm, Morales argued that he would be forced to disclose his theory of defense and incriminate himself. Morales requested that the court "reconsider its informal ruling that counsel must reveal to the Government its expert witness regarding threats made with a firearm against the defendant"[2] because "[t]he gun expert will need to

_____

[2]The "informal ruling" Morales references is the district court's statement at the March 21, 2011 pretrial conference that it would enforce the terms of the stipulated

demonstrate the phenomenon of 'racking the slide'—crucial to the Defendant's Theory of Defense." On March 27, 2011, Morales filed an ex parte offer of proof in which he submitted a videotape of the firearms expert demonstrating how to "rack the slide" of a semiautomatic weapon and urged the court to "reconsider its decision to enforce the stipulated reciprocal discovery order where it will conflict with Defendant's Fifth and Sixth [A]mendment rights." Prior to trial, Morales's counsel argued that the video was necessary to demonstrate the "intimidating sound" a semiautomatic weapon makes when "you rack the slide."

The district court denied the motion for ex parte notice of defense witnesses and exhibits based on the stipulated discovery order and because, as a practical matter, the court had to be able to "weed out anybody on the jury who may know witnesses that you may call." Regarding the ex parte offer of proof, the court withheld ruling and urged Morales's counsel "to try to get [evidence of racking the slide] in through other witnesses."

Morales's counsel did not call the firearms expert to testify at trial. Instead, during his cross-examination of Ryan Moore, Special Agent with the Iowa Division of Narcotics Enforcement, he asked about racking the slide of a semiautomatic weapon.

> Q. And if you want to load it for the . . . first time, how do . . . you load a semiautomatic?
>
> A. There's an action or what I would call a slide. You drop the magazine in. You pull the slide back. It chambers the round, and it's ready to fire.
>
> Q. Is that what they refer to as racking the slide?

---

discovery order.

A. Racking the slide, yes.

Q. Does it make a noise?

A. Yes, yes, sir.

On direct examination, Moore testified that the ammunition found in Garabito's apartment was for a semiautomatic weapon.

Morales testified at trial that he loaned his vacuum cleaner to Garabito in early May and that after Garabito returned it, "the sound was different." When Morales opened the vacuum, he discovered that "inside [the vacuum] were 2 bags of something . . . and . . . a little black box." Morales testified that he went to Garabito's apartment down the hall to confront him about the drugs. According to Morales, Martin Gamboa, also called 'Tine, and a man named Juan were in the apartment. Gamboa "got mad, and he grabbed the pistol and he loaded it." Morales testified that Gamboa told Morales that "if [he] went to the police . . . [Gamboa] could hurt [Morales's] family in Mexico or [in Iowa]." Morales asserted that Gamboa told him that he "had to do [Gamboa] 2 favors, and then [Gamboa] was going to leave [Morales] alone and he wouldn't hurt [Morales's] family either in Mexico or [in Iowa]." Morales also testified that he did not go to the police after he left the apartment because he believed that Hampton's police chief was racist and did not like Hispanics. Morales admitted that he sold methamphetamine to a confidential informant on two occasions but claims that he did so because he was afraid of Gamboa.

On cross-examination, Morales admitted that the Hampton police chief was Hispanic. Morales also stated that he played soccer with a Hampton police officer, but he never told the officer about the threat. Morales worked Sunday through Friday every week, and he did not work with Gamboa or Juan. However, Morales testified

that he told the officers during questioning that he "was afraid . . . of a certain person."

A private investigator testified during trial that he had located a "Martin Gamboa" in Hampton, Iowa, but that he had not been able to make contact with him. A defense witness testified that she had heard of a "Martin Gamboa" and that his nickname was 'Tine. She also testified that he did not live in Morales's apartment building.

Over Morales's objection, the district court declined to offer a coercion instruction or theory-of-defense instruction to the jury. The jury found Morales guilty on all three counts in the indictment.

## II. *Discussion*

On appeal, Morales argues that the district court erroneously (A) required Morales to disclose his firearms expert; (B) prohibited his firearms expert from testifying; (C) refused to instruct the jury on the defense of coercion; (D) refused to provide the jury with Morales's theory-of-defense instruction; and (E) prohibited Morales's counsel from presenting his theory of defense in closing arguments.

### A. *Expert Witness Disclosure*

Morales argues that the district court violated his Fifth and Sixth Amendment rights by requiring him to disclose his firearms expert prior to trial, which would have exposed him to an additional charge for "use of a firearm by a member of the alleged conspiracy." The government argues that because Morales never called the expert to testify at trial and did not get a final ruling on the admissibility of the expert's videotape, "his claims of constitutional harm are speculative."

Generally, we review a district court's enforcement of a discovery agreement between the parties for an abuse of discretion. *See United States v. Edwards*, 159 F.3d

1117, 1130 (8th Cir. 1998) (finding "[t]he district court's order interpreting and enforcing [a pretrial] agreement was not an abuse of its substantial case management discretion"). "Normally a party is bound by his stipulations as a stipulation . . . is akin to a contract." *Rathborne Land Co., L.L.C. v. Ascenty Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010) (quotation and citation omitted); *see United States v. 3,788.16 Acres of Land*, 439 F.2d 291, 294 (8th Cir. 1971) (noting that "parties are bound by stipulations voluntarily made" (quotation and citation omitted)). Morales's obligation to comply with the stipulation agreement was freely entered and not compelled. Thus, the district court did not abuse its discretion by ordering Morales to comply with the stipulated discovery order.

As to Morales's constitutional claim, Morales alleges that *if* he had disclosed the expert witness pursuant to the stipulated order, then his constitutional rights would have been violated because "doing so would [have] reveal[ed] his theory of defense and potentially expose[d] him [to] an additional charge [for use of a firearm by a member of the alleged conspiracy]." Because Morales did not disclose the expert or call the expert to testify at trial, he has failed to allege an injury that is more than speculative. *Cf. United States v. Ray*, 411 F.3d 900, 903 (8th Cir. 2005) (stating that, although "issues decided in motions in limine are not inherently too speculative for appeal," appeals based on "what [the defendant] thinks might have happened at trial" are too speculative).

## B. *Expert Witness Testimony*

Morales also argues that the district court violated his constitutional rights by "declin[ing] to allow actual testimony or submission of the video exhibit" of his firearms expert at trial. Pursuant to Federal Rule of Evidence 103(a),[3] "[o]nce the

---

[3]"A new version of the Federal Rules of Evidence went into effect on December 1, 2011." *United States v. Jean-Guerrier*, 666 F.3d 1087, 1091 n.2 (8th Cir. 2012). "These changes are intended to be stylistic only." Fed. R. Evid. 103 advisory committee's note. "All quotations here are from the rules in effect during

court makes a *definitive* ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." (Emphasis added.) The district court in this case made no such definitive ruling. Instead, the court expressly withheld ruling on whether the video was admissible, and Morales never sought a final ruling on the matter. Morales introduced substantially the same evidence that the expert would have provided through the cross-examination of Special Agent Moore. Morales's "failure to seek a final ruling at trial waived the issue." *United States v. Echols*, 346 F.3d 818, 821 (8th Cir. 2003). Such a waiver "negate[s] even plain error review." *United States v. Frokjer*, 415 F.3d 865, 871 (8th Cir. 2005) (quotation and citation omitted) (determining that a defendant waived an objection to videotape evidence when the district court did not make a definitive ruling on a motion in limine and that the defendant made a tactical decision not to object to the evidence at trial); *see also United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000) (noting that a defendant can waive his Fifth Amendment privilege against self-incrimination); *Wabasha v. Solem*, 694 F.2d 155, 157 (8th Cir. 1982) (noting that the defendant waived his Sixth Amendment right to compulsory process by pleading guilty).

## C. *Jury Instructions*

Morales argues that the district court erred by refusing to provide the jury with one of two proffered coercion instructions and the proffered theory-of-defense instruction. "A defendant is entitled to a particular jury instruction when the instruction provides a correct statement of the law and is supported by the evidence." *United States v. Harper*, 466 F.3d 634, 649 (8th Cir. 2006). "When a party timely requests a specific jury instruction and makes a proper objection to its omission, we review the district court's action for abuse of discretion." *United States v. Christy*, 647 F.3d 768, 770 (8th Cir. 2011).

---

[Morales's] [March 2011] trial." *Jean-Guerrier*, 666 F.3d at 1091 n.2.

## 1. *Coercion Instruction*

First, Morales contends that the district court abused its discretion by failing to instruct the jury on the defense of coercion.

> A coercion [instruction] is warranted only if a defendant establishes (1) an immediate threat of a nature sufficient to induce a well-grounded apprehension of death or serious bodily injury if the offense is not committed and (2) that the threat occurred in a situation in which there was no reasonable opportunity to avoid the danger. A defendant cannot invoke the defense of coercion if there existed an opportunity to avoid the act without threat of harm or a reasonable and legal alternative to the commission of the crime.

*Harper*, 466 F.3d at 648 (quotation and internal citations omitted). "[E]vidence of . . . coercion may be stricken if the defendant is unable to present proof of all elements of the defense." *United States v. Blankenship*, 67 F.3d 673, 678 (8th Cir. 1995). "We review de novo a district court's determination that the evidence was insufficient to support submitting a[] [coercion] instruction to the jury." *Harper*, 466 F.3d at 649.

In *Harper*, we determined that a defendant who was threatened by an individual who put a gun to the defendant's head and demanded two favors from him, which he later performed, did not show that the perceived threat was immediate because the threat occurred "on a prior, separate occasion" from the subsequent acts and "at most" caused the defendant to fear "that in the future [the individual] might act on the prior threat." *Id.* at 648. Likewise, Morales failed to establish the immediacy of any perceived threat. Gamboa's threat to his family occurred "on a prior, separate occasion" from either of the controlled buys. *Id.* And at most, Morales feared "that in the future [Gamboa] might act on the prior threat." *Id.* "Such a generalized and speculative fear fails as a matter of law to establish an immediate threat for purposes of a coercion defense." *Id.*

-9-

Morales attempts to distinguish *Harper* by arguing that "this case involves a standing threat of immediate violence" like the threat to the defendant in *United States v. Ceballos*, 593 F. Supp. 2d 1054, 1062 n.7 (S.D. Iowa 2009). That case is inapposite, however, as it involved repeated instances of domestic violence. *Id.* at 1061–62. The district court in *Ceballos* found the

> [d]efendant's evidence . . . sufficient to establish a prima facie case [of coercion] and relevant in this context because her testimony and the testimony of her family members, including her sister's statements that Gomez beat Defendant almost to the point of unconsciousness, clearly tend to establish the objective seriousness and constant immediacy of the threat Gomez posed.

*Id.* at 1061. Those facts are not present here.

Morales also failed to provide evidence at trial that "the threat occurred in a situation in which there was no reasonable opportunity to avoid the danger." *Harper*, 466 F.3d at 648. Morales argues that it is "well-documented" that Mexican authorities would not have protected his family in Mexico. *See United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984) (holding that the trier of fact should decide whether the defendant could objectively believe that police in Colombia "were paid informants for drug traffickers and that reporting the matter to the police did not represent a reasonable opportunity of escape"). However, Morales "could not have reasonably believed that exposing [Gamboa's] plans and threats to the police in [Hampton, Iowa,] would be futile." *United States v. Jankowski*, 194 F.3d 878, 883 n.3 (8th Cir. 1999) (distinguishing *Contento-Pachon*). Morales argues that he did not believe that he could go to police in Iowa because he believed that the police chief hated Hispanics and because Morales was an illegal alien. "[A] defendant's subjective belief that going to law enforcement would prove futile is insufficient to meet the objective standard that there was no reasonable, legal alternative to violating the law."

-10-

*Harper*, 466 F.3d at 648. Morales played soccer every week with a police officer and had ample opportunity to report Gamboa's threats to him or any other officer.

## 2. *Theory-of-Defense Instruction*

Second, Morales argues that the district court abused its discretion by failing to offer to the jury his theory-of-defense instruction. It is true "that a criminal defendant is entitled to a theory-of-defense instruction that is timely requested, correctly states the law, and is supported by the evidence." *Christy*, 647 F.3d at 770 (quotation, alteration, and citation omitted). However, a defendant is not entitled "to a judicial narrative of his version of the facts." *Id.* (quotation and citation omitted). Furthermore, "[e]ven where the court declines to give an instruction on a theory of defense that is supported by the evidence, there is no error if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it." *Id.*

"Measured against this standard, the district court's refusal to submit the proffered instruction was not error." *Id.* Morales's proffered theory-of-defense instruction consisted almost entirely of factual allegations and legal conclusions that the evidence did not support.[4] Moreover, as stated *supra*, Morales was not entitled to a coercion defense, and his proffered theory-of-defense instruction attempted to explain how he "was . . . coerced into committing illegal acts." Morales did not argue that the district court's instructions were otherwise erroneous. Thus, the district court did not abuse its discretion by failing to offer Morales's theory-of-defense instruction.

---

[4]The factual allegations unsupported by the evidence are that Morales "had no alternative but to cooperate with ['Tine]," that "'Tine . . . lived in the same building with [Morales]," and that "Hampton Police Chief Ray Beltran's reputation, viewed objectively, is that Beltran is dishonest and quick to judgment." The evidence also did not support the legal conclusion that Morales "was immediately coerced into committing illegal acts for which he had no reasonable alternative."

-11-

E. *Closing Arguments*

Finally, Morales contends that the district court erred by preventing his counsel from presenting his defense theory in closing arguments. We review this contention for an abuse of discretion. *United States v. Thomas*, 664 F.3d 217, 224 (8th Cir. 2011).

Morales alleges that "the Trial Court explicitly ruled that counsel could not discuss the threats in terms of the intent element in each charge and could not use the words coercion or duress." He also says that "[t]he court made very clear and the record supports that counsel was limited in discussing many of the matters outlined in the theory of defense relative to the alleged threats."

Although the district court ruled that Morales's counsel could not assert a coercion defense in closing arguments, the court permitted counsel to argue that Morales's actions were involuntary. The court determined that "the better procedure . . . is to give the jury no instruction on this and let . . . [defense counsel] argue it in terms of voluntariness." The court told defense counsel that he could "argue that the government has not proven voluntariness of the joining—that your client voluntarily joined the conspiracy." The government informed the court and defense counsel that it would object during his closing if "he starts veering into the coercion, duress jury nullification argument in the guise of voluntariness." The government did not object during defense counsel's closing argument.

Thus, the district court did not prohibit Morales's counsel from arguing that Morales's actions were involuntary. The district court did not abuse its discretion by prohibiting Morales's counsel from arguing that Morales's actions were coerced. *See* Part II.D *supra*.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____