# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1623
_____

United States of America

*Plaintiff - Appellee*

v.

Eric Ladeaux

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: November 17, 2022
Filed: March 3, 2023

_____

Before BENTON and ERICKSON, Circuit Judges, and BUESCHER,[1] District
Judge.

_____

BENTON, Circuit Judge.

A jury convicted Eric Ladeaux of two counts of felon-in-possession and one
count of possessing an unregistered firearm.  *See* **18 U.S.C. §§ 922(g)(1)**, **924(a)(2)**;

---

[1]The Honorable Brian C. Buescher, United States District Judge for the
District of Nebraska, sitting by designation.

**26 U.S.C. §§ 5861(d)**, **5845**, **5871**.  He appeals the convictions.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

A jury convicted Eric Ladeaux of three firearm offenses.  The first stemmed from a traffic stop where he initially provided a fake name but was later identified by bodycam footage.  The second and third offenses followed an arrest after a car chase.  Officers found Ladeaux in the passenger seat of a car believed to have robbed a Kohl's store.  A sawed-off shotgun was under his seat, bullets on the floor at his feet.  Believing Ladeaux had possessed the gun, the government charged him with felon-in-possession and possession of an unregistered firearm.  *See* **18 U.S.C. §§ 922(g)(1)**, **924(a)(2)**; **26 U.S.C. §§ 5861(d)**, **5845**, **5871**.  The district court[2] sentenced him to 84 months in prison and three years of supervised release.

Ladeaux brings three challenges.  First, he argues that Standing Order 19-03 and Standing Order 16-04[3] denied him his constitutional right to prepare for trial.  Second, he claims the district court erred in declining to give his requested jury instruction on duress and coercion. Finally, he challenges the evidentiary sufficiency of his conviction.

---

[2]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

[3]These standing orders are now incorporated into the local rules at D.S.D. Crim. LR 16.1 and 57.10, respectively.  *See* https://www.sdd.uscourts.gov/sites/sdd/files/LR%2016.1%20DISCOVERY.pdf (Rule 16.1) *and* https://www.sdd.uscourts.gov/sites/sdd/files/LR%2057.10%20ACCESS%20TO%20CRIMINAL%20DOCUMENTS.pdf (Rule 57.10).

## II.

Before trial, the district court entered Standing Order 19-03 and Standing Order 16-04 with the consent of both parties. These orders limited incarcerated defendants' access to sealed and restricted discovery documents. By the Standing Orders, defendants could review sealed and restricted documents in designated prison areas either alone or with counsel, but could not make or retain copies and could not show the documents to other incarcerated individuals. Ladeaux argues that these orders deprived him of his Sixth Amendment right to prepare effectively for trial.

Ladeaux's argument is new on appeal. Ladeaux neither requested an exception to the Standing Orders nor lodged an objection when he stipulated to entering them. Because he did not complain to the district court that the Standing Orders violated his constitutional rights or the Federal Rules of Criminal Procedure, this court reviews his claim for plain error. *See United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) (plain-error review applies to unpreserved arguments); **Fed. R. Crim. P.** 52(b).

The Standing Orders do not require reversal. A misquotation of Rule 16(d) grounds Ladeaux's argument. Claiming that Federal Rule of Criminal Procedure 16(d) requires a "sufficient showing" to restrict discovery, Ladeaux cites precedent establishing that a "sufficient showing" requires individualized inquiries. Here, the district court entered the standing orders without assessing the individualized facts of Ladeaux's case. This failure to make an individualized inquiry, he argues, falls short of Rule 16(d)'s "sufficient showing" requirement.

To the contrary, Rule 16(d) does not require a "sufficient showing"; it requires only "good cause" to modify or restrict discovery. **Fed. R. Crim. P. 16(d)(1)** ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."). "Sufficient showing" cases are

irrelevant. This court rejected an identical challenge to this standing order based on an identical misquotation:

> Smith's first argument fails on its own terms. Smith claims that the district court's Standing Order violates Rule 16(d)(1), which he says provides that "[u]pon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred." According to Smith, the Standing Order flouts the "sufficient showing" requirement.
>
> But Rule 16(d)(1) does not have a "sufficient showing" requirement. Instead, it says only that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). So the Standing Order does not run afoul of Rule 16(d)(1).

*United States v. Smith*, 4 F.4th 679, 685 (8th Cir. 2021).

Ladeaux cites some cases discussing the "good cause" requirement found in Rule 16, but they do not mandate an individualized inquiry. Ladeaux misconstrues each individualized inquiry *where a party has moved for unique discovery limitations* as a blanket rule that courts must conduct this inquiry in every instance. *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("The burden of showing 'good cause' is on the party seeking the order, and . . . the court will [take into account] the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security."); *United States v. Wecht*, 484 F.3d 194, 212 (3rd Cir. 2007) (upholding a district court's decision, reached after "weighing of the competing considerations," that "the government had failed to demonstrate a compelling interest or good cause to justify the continual sealing").

One case makes explicit that an individualized inquiry assists a court in analyzing whether the moving party has met its burden of proof, but does not limit the district court's broad discovery discretion. *See United States v. Dixon*, 355 F.

Supp. 3d 1 (D.D.C. 2019). The district court there observed: *"When the Government is seeking a protective order*, it bears the burden of showing that good cause exists for its issuance." *Id.* at 4 (emphasis added). The *Dixon* court noted that the "level of particularity required" for good cause "depends on the nature and type of protective order at issue" and that district courts have "vast discretion" to craft discovery limitations. *Id.* at 3.

The District of South Dakota's Standing Orders limit access to certain documents "[i]n order to protect the safety of federal defendants and the integrity of ongoing investigations and related prosecutions." *See* **Local Rule 57.10(A)**. This general purpose satisfies Rule 16(d)'s good-cause requirement. The district court did not plainly err in entering its Standing Orders.[4]

---

[4]A criminal defendant "has a constitutional right 'to conduct his own defense.'" ***United States v. Smith***, 830 F.3d 803, 808 (8th Cir. 2016), *quoting* ***Faretta v. California***, 422 U.S. 806, 836 (1975). Conducting a defense necessitates adequate time and resources to prepare for trial. *See* ***Kansas v. Ventris***, 556 U.S. 586, 590 (2009) ("[T]he opportunity . . . to prepare a defense for trial" with one's attorney is "the core" of the Sixth Amendment right to counsel."). Denying a self-represented criminal defendant the ability to prepare for trial can effectively abrogate his constitutional right to self-representation. *See* ***Powell v. Alabama***, 287 U.S. 45, 59 (1932) ("It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case." (quotation omitted)).

The Standing Orders, now local rules, raise Sixth Amendment concerns. District courts can (and regularly do) provide incarcerated defendants with secure digital discovery. *See* U.S. D.O.J. Joint Electronic Technology Working Group, ***Guidance for the Provision of ESI [Electronically Stored Information] to Detainees***, 7 (Oct. 25, 2016) (emphasizing the importance of e-discovery to incarcerated individuals and suggesting courts impose case-specific procedures to address security concerns). But because Ladeaux did not raise this issue before the trial court—and did not develop a factual record—this court conducts only plain-error review. No plain error occurred here. *But see* ***Frazier v. Heebe***, 482 U.S. 641, 645 (1987) ("A district court's discretion in promulgating local rules is not, however, without limits.); ***Holloway v. Lockhart***, 813 F.2d 874, 880 (8th Cir. 1987) (reviewing the legality of district court local rules).

## III.

Halfway through trial, Ladeaux requested a jury instruction on duress and coercion. The district court told him that no evidence had yet been presented to support these affirmative defenses. But the court promised to instruct the jury on Ladeaux's theories if he testified that coercion or duress caused him to possess firearms. Defense counsel did not object. Ladeaux did not testify, so the court did not instruct on coercion and duress. On appeal, Ladeaux argues that the court erred by declining to give a duress and coercion instruction.

This court reviews de novo whether a defendant produced enough evidence to warrant an instruction on coercion and duress, which are affirmative defenses. *See United States v. Sharron*, 986 F.3d 810, 813 (8th Cir. 2021). A party is entitled to an instruction on its theory of the case if legally correct and factually supported. *See Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017).

To carry his evidentiary burden on a duress/coercion affirmative defense, Ladeaux had to show (1) an unlawful and imminent threat of death or serious bodily injury; (2) absence of contributory negligence; (3) that he "had no reasonable, legal alternative to violating the law;" and (4) a direct causal relationship between his crime and avoiding the threatened harm. *United States v. Myles*, 962 F.3d 384, 387 (8th Cir. 2020).

Ladeaux points to no evidence of the third element, absence of a legal alternative. He claims that a Facebook video supports his affirmative defense. In that video, Ladeaux brandishes a gun and promises to defend himself against anyone who comes after his family. He sent the video to a man named Paycheck Johnny, who replied that he too was "ready to die or spend the rest of [his] life in a cell." Even if this exchange showed an (1) imminent threat from Paycheck Johnny that was (2) not caused by Ladeaux's negligence and (4) avoided by Ladeaux's illegal firearm possession—generous assumptions—Ladeaux points to no evidence that he (3) had no legal alternative to avoid the threat. In situations like his, legal

alternatives exist. *See Myles*, 962 F.3d at 388 (ruling that a defendant could have reported threats to law enforcement, so she had a legal alternative); *United States v. Harper*, 466 F.3d 634, 648-49 (8th Cir. 2006) ("[A] defendant's subjective belief that going to law enforcement would prove futile is insufficient to meet the objective standard that there was no reasonable, legal alternative to violating the law.").

Because Ladeaux did not show the absence of legal alternatives to firearm possession, the district court did not abuse its discretion in declining to instruct the jury on coercion/duress.

IV.

This court reviews evidentiary sufficiency de novo, viewing the evidence most favorably to the verdict and drawing all reasonable inferences in the jury verdict's favor. *United States v. Hensley*, 982 F.3d 1147, 1154 (8th Cir. 2020).

Ladeaux disputes the jury's conclusion that he *knowingly* possessed the sawed-off shotgun charged in counts two and three. His argument fails when "viewing the evidence most favorably to the verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." *Id.*

Ladeaux's own statements support the verdict. Although he was one of many passengers in the car that held the gun, he told officers that he "wouldn't charge [the other passengers] with the gun" and joked that he might have held the other passengers hostage with a "12-guage." Officers testified that Ladeaux had never been told that a gun was found in the car, much less that it was a 12-guage. Police found the sawed-off shotgun under the passenger seat where Ladeaux sat. The gun's stock was positioned toward him, bullets at his feet. Ladeaux's knowledge that the car held a 12-guage shotgun, the gun's position, and his proximity to it support an inference that he knowingly possessed the gun. The jury had sufficient evidence to convict.

The reply brief also challenges the evidentiary sufficiency for count one. This argument, not raised in the opening brief, is waived. *See **United States v. Grace***, 893 F.3d 522, 525 (8th Cir. 2018).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____